**LOCAL UNION 673, BROTHERHOOD OF ELECTRICAL WORKERS, Appellant,**

**v.**

**MARKELL, Appellee.**

[Cite as *Loc. Union 673, Bhd. of Elec. Workers
v. Markell* (1989), 64 Ohio App.3d 217.]

Court of Appeals of Ohio,
Lake County.

No. 88–L–13–191.

Decided Nov. 7, 1989.

*Joyce Goldstein,* for appellant.
*David P. Freed,* for appellee.

Ford, Judge.

This is an accelerated calendar case.

This case came before the trial court in Lake County with both parties filing for summary judgment. There were no disputes as to the material facts.

Appellee had been a member of appellant-union since 1965. In April 1986, appellee discontinued payment of his union dues for a period of approximately three months. In July, appellee exercised his right to reinstatement by

paying his dues which were then in arrears and further prepaying all dues until September. After September 1986, appellee ceased paying dues altogether. Appellee did not notify the union of his desire to discontinue his union membership.

The union's International Constitution sets forth the following guidelines regulating membership status when dues are in arrears. Article XXIII states, in pertinent part:

"Sec. 2. When a member's working card has expired, he at once, without notice, stands suspended from all L.U. benefits.

"Sec. 3. Any member indebted to his L.U. for three months' dues, or having any past due indebtedness to the I.B.E.W. for dues or assessments, shall stand suspended, * * *. Such member cannot be reinstated until all indebtedness has been paid, unless waived by the L.U. However, dues cannot be waived. * * *

"Sec. 4. Any member indebted to his L.U. for six (6) months' full dues shall be dropped from membership by the F.S. and cannot become a member in good standing again in the I.B.E.W. except by joining as a new member. * * *

"Sec. 5. Members in arrears forfeit all rights and previous standing in the I.B.E.W. and if reinstated, their continuous good standing and benefits shall date only from the time of their reinstatement. However, they shall retain their former card number."

Members in the three-to-six month "window" period retain only the right of reinstatement to the status of a member in good standing. Once reinstated, the member forfeits all previous standing in the union, becoming a member from the time of reinstatement onward. This right of reinstatement is unconditional, whereas the process of applying for new membership is more onerous. After six months of arrearage, the right to reinstatement lapses and membership rights are extinguished. In order to regain his/her membership status, an expelled member would thereafter have to reapply as a new member.

On February 23, 1987, appellee was observed performing electrical work by two members of the union in violation of the union agreement. One member filed an internal union charge. A copy of the charge was sent to appellee, scheduling a hearing date and informing him of his right to attend, present evidence and cross-examine witnesses. Appellee did not attend the hearing. The union fined appellee $1,086. Appellee was notified by certified mail of the fine and his right to appeal the decision. Appellee chose to neither appeal nor

pay the fine. The union instituted suit in the trial court in order to collect the fine.

The trial court, in considering both parties' motions for summary judgment, held that appellee did not have to pay the fine. The rationale of the trial court was that, since appellee had fallen into arrears for more than three months, he forfeited all rights and previous standing with the union, save for the right to reinstatement. Once reinstated, the court noted "the applicant shall be subject to the limitations imposed by the constitution." Article XXIV, Section 2. The trial court felt that it logically followed that appellee could not be bound by any of the union's limitations during the suspension period. The union timely filed notice of appeal to this court and asserted the following assignments of error:

"1. The trial court erred in granting defendant-appellee's motion for summary judgment, having incorrectly determined that the defendant-appellee was not a union member at the time he violated the union's rules.

"2. The trial court erred in denying plaintiff-appellant's motion for summary judgment."

The union alleged two assignments of error containing several sub-issues. However, when this case is reduced to its essence, there is only one true assignment being alleged by the union, which is that the trial court erred in determining that appellee was not subject to the rules of union membership. The trial court's opinion implicitly delineates appellee as a nonmember of the union due to his suspension. If the trial court erred, the union would have the right to enforce disciplinary penalties and to hold appellee to strict participation in the union's internal adjudication process. If appellee was not a member, due to his suspension, all the union's other contentions are meritless because a voluntary organization cannot impose discipline on nonmembers.

■ In undertaking this discussion, "we are reminded by the union of the policy against judicial interference in the internal affairs of unions. * * * [W]e approach our resolution of this issue fully conscious of, and with respect for, the interests that underlie that policy." *Alvey v. General Elec. Co.* (C.A.7, 1980), 622 F.2d 1279, 1285. At the same time, this court will not defer to the union's interpretation if it is "unreasonable, arbitrary, capricious or oppressive." *Gallagher v. Harrison* (1949), 86 Ohio App. 73, 76, 40 O.O. 494, 495, 88 N.E.2d 589, 592.

The union argues that the trial court erred in ruling that a union member under suspension is not a member of the union and directs this court's attention to *U.A.W. v. Scofield* (1971), 50 Wis.2d 117, 183 N.W.2d 103. In *Scofield,* the suspended member propounded the defense of nonmembership,

similar to the case at bar. While noting that "[a] suspended member is not a member 'in good standing,'" the Wisconsin Supreme Court held that "th[is] does not mean he is not a 'member' of the union." *Id.* at 131, 183 N.W.2d at 110. A careful reading of *Scofield* reveals that the union constitution under examination contained significant differences from the case *sub judice.* In *Scofield,* the court noted, "a member may resign only if he is in 'good standing' and is not delinquent in the payment of any financial obligation to the international or local union." *Id.* Even if the member wished to resign from the union, he could not do so unless and until his arrearages were paid.

There is no provision, equivalent to that discussed in *Scofield,* in the constitution of the union. In fact, there is some question whether a provision like that in *Scofield* is presently valid, in light of *Pattern Makers' League of North America, AFL–CIO v. NLRB* (1985), 473 U.S. 95, 105 S.Ct. 3064, 87 L.Ed.2d 68, and *NLRB v. Internatl. Bhd. of Elec. Workers, Loc. 340* (1987), 481 U.S. 573, 107 S.Ct. 2002, 95 L.Ed.2d 557, which held that "union members have a right to resign from a union *at any time* and avoid imposition of union discipline." (Emphasis added.) *Id.* at 575, 107 S.Ct. at 2004, 95 L.Ed.2d at 563. Regardless of whether *Pattern Maker's League* impliedly overrules *Scofield* or not, this court finds that a close reading of *Scofield* indicates that the *Scofield* court firmly grounded its holding in the facts of the case. Therefore, the union's reliance on *Scofield* is unavailing.

■ The union also contends that this court should adopt a "presumption of membership" that it finds present in federal court decisions, notably *Alvey v. General Elec. Co., supra. Alvey,* like many federal cases, uses as its base definition of "member," Section 402(*o*), Title 29, U.S.Code, known as the Labor–Management Reporting and Disclosure Act of 1959. This section defines "member" as follows:

" * * * any person who has fulfilled the requirements for membership in such organization, *and who neither has voluntarily withdrawn from membership nor has been expelled or suspended* from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization." (Emphasis added.)

In *Alvey,* the union had a rule that deprived laid-off employees of their right to vote in union elections because union rules forbade them from paying dues while laid off. Consequentially, union members were disenfranchised without either a formal union hearing or volitional activity of their own. The seventh circuit noted that, as these employees had neither voluntarily withdrawn nor been expelled, they were still members in good standing, despite the union rule.

Appellant-union reads *Alvey* as standing for an underlying presumption of membership. This interpretation is not supported by the case. Rather, *Alvey* is the exception that proves the rule, that union members who *voluntarily* cease to pay their dues, and are suspended therefor, cease to be members. Other cases that support the proposition that union members remain members until suspended for nonpayment of dues include *Brennan v. Loc. 357, Internatl. Bhd. of Teamsters* (C.A.9, 1983), 709 F.2d 611; *Erkins v. Bryan* (C.A.11, 1981), 663 F.2d 1048, 1051, certiorari denied (1982), 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384; *Stone v. Loc. 29, Boilermakers* (D.Mass.1967), 262 F.Supp. 961.

In *Brennan,* appellant, having been suspended for nonpayment of dues, was found not to be a union member and therefore lacked standing to raise procedural protections of the LMRDA. *Brennan, supra,* at 616. Similarly, in *Stone,* "plaintiff's concession that he was validly suspended from union membership put him beyond the pale of section [*sic*] 29 U.S.C. section 402(*o*)." *Stone, supra,* cited in *Brennan, supra,* at 616.

██ The union also contends that the trial court was in error in its reading of the union constitution. Specifically, the union states that the word "limitations" in Article XXIV, Section 2 does not modify all obligations of membership but only specific limitations that are imposed on reinstated members. These specific limitations include a loss of local and international union seniority and of enjoying local union benefits for six months after reinstatement. The union contends that the trial court's reading was too broad, as it interpreted "limitations" as relating to all rules and regulations in the union constitution.

A close scrutiny of the union's constitution reveals that the trial court construction of "limitations" is overinclusive. However, interpretation of the term "limitations" in the manner urged by the union does not preclude the trial court's ruling from being accurate. The membership reinstatement process works as follows: the member has three months in which dues can be in arrears before being placed on suspension. At the end of this period, the member is suspended, his/her card revoked, and all rights of membership lost, save for the right of reinstatement. Once suspended, the member is, in essence, stripped of all perquisites of membership, save for the right to reinstatement that exists throughout the three- to six-month "window" period. Should the suspended member comply with the reinstatement process, he/she loses seniority and the right to enjoy benefits for six more months.

Reading the union constitution, in conjunction with Section 402(*o*), Title 29, U.S.Code, this court cannot say that the trial court was in error in interpreting the union's constitution. A person under suspension enjoys no benefits, has

no valid union card, and cannot get referred work by the union. To hold that this person is still a member and liable to perform his/her part of the contract would be to support a designation far more apparent in form than substance.

Nor is the union's argument, regarding the consequences of failing to uphold their interpretation, compelling. The union contends that, if the union constitution is interpreted in the manner done by the trial court, members could stop paying dues for six months, violate the union's rules and then force the union to reinstate them. The problem with this argument is that it presumes members will accept forfeiting their seniority, having to pay six months dues at once plus reinstatement charges, and losing all benefits for nine months for the sake of being able to violate union rules. It seems unlikely that union membership will find that the goal of breaking the union's rules is worth the cost in lost money and benefits.

Finally, given the interpretation, in Section 402(*o*), Title 29, U.S.Code, of the term "member," this court is not persuaded that appellee was a member of the union simply because he was labeled as such by the union. Construction of the union's constitution so as to find appellee a member would be both unreasonable and contrary to law. Therefore, the union's assignment of error is without merit.

Having held that appellee was not a member of the union at the time of his suspension, it is unnecessary to consider the issues of a union's right to discipline its members or of whether to require union members to exhaust internal union remedies before going to trial.

For the foregoing reasons, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., concurs.

JOSEPH E. MAHONEY, J., concurs in judgment only.