**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 8, Appellant,**

v.

**GROMNICKI, Appellee.**

[Cite as *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Gromnicki* (2000), 139 Ohio App.3d 641.]

Court of Appeals of Ohio,
Sixth District, Wood County.

No. WD–99–050.

Decided May 12, 2000.

*Joseph M. D'Angelo,* for appellant.

*Thomas W. Heintschel,* for appellee.

PIETRYKOWSKI, Judge.

This case is before the court on appeal from the Wood County Court of Common Pleas, which granted the summary judgment motion of appellee Edmund Gromnicki and denied the summary judgment motion of appellant International Brotherhood of Electrical Workers, Local Union No. 8. For the reasons that follow, we hold that the decision of the Wood County Court of Common Pleas must be reversed.

Appellant filed this action in the trial court to collect a fine that it had imposed on appellee for engaging in nonunion work while a member of the union. Appellee had been a member of the union since approximately 1970. According to appellee, he decided to quit the union in the summer of 1989. To that end, he made his last dues payment to appellant on July 26, 1989, which was to cover the three-month period of July, August, and September 1989. His union dues for the next three-month period were due on October 1, 1989, and appellee did not make that payment.

Sometime in the fall of 1989, apparently after October 1,[1] a fellow union worker discovered that appellee was running a nonunion electrical firm and requested that appellee cease such work. Appellee did not cease his nonunion work. After appellee's dues payments were in arrears for a period of three months (October,

---

1. The record is not entirely clear as to the exact date that appellee was initially observed performing nonunion work. However, several references in the record suggest that the fellow union member observed appellee performing non-union work in either October or November 1989.

November, and December 1989), according to the union's constitution, appellee was suspended from the union as of January 1, 1990.

On January 3, 1990, appellant charged appellee for his nonunion work in violation of Article III, Section 3.01 of the Inside Agreement, Article XXII, Sections 3 and 4 of the union's constitution, and Article XXVII, Section 1, subsection 5 of the union's constitution. Appellant subsequently notified appellee of the time and date of the hearing, and appellee appeared at the hearing, put on a witness, and pleaded partial guilt to the charges. Appellant fined him $15,000. On February 13, 1990, the union's trial board notified appellee of its decision and his right to appeal. Appellee does not dispute appellant's representation that he did not appeal this decision. On March 31, 1990, when appellee's dues payments were in arrears a full six months, in accordance with the union's constitution, appellee was dropped from the union's membership rolls for nonpayment of dues. Appellant filed the instant lawsuit on July 23, 1998, to collect the unpaid $15,000 fine that it had imposed on appellee.

Appellee filed with the trial court a Civ.R. 12(B)(6) motion to dismiss the amended complaint on statute of limitations grounds. The trial court denied this motion. Thereafter, appellant filed a motion for summary judgment against appellee, arguing that appellee's refusal to comply with the decision of the trial board constituted a breach of contract. Appellee subsequently filed a cross-motion for summary judgment, arguing, principally, that the union could not impose a fine on him when he was no longer a member of the union at the time of his suspension. The trial court granted appellee's motion for summary judgment and denied appellant's motion for summary judgment, holding that appellee was not a union member once he was suspended. Appellant then filed the instant appeal, setting forth the following six assignments of error:

"I. The trial [court] committed reversible error by failing and refusing to give effect to the clear and unambiguous language in the union's constitution pertaining to suspension and expulsion of members.

"II. The trial court committed reversible error by failing and refusing to recognize the legal right of a union to impose disciplinary fines on former members for offenses committed before the union–member relationship was terminated.

"III. The trial court committed reversible error by failing and refusing to hold that the mere failure to pay union dues, without more, is legally insufficient to effectuate a termination of the union–member relationship, as a matter of law.

"IV. The trial court committed reversible error by failing and refusing to require, as a matter of law, that to be effective, a disaffected union member must

provide some explicit, affirmative manifestation of intent that clearly and unequivocally communicates his desire to resign from union membership.

"V. The trial court committed reversible error when it held that a suspended union member is not subject to union rules and discipline.

"VI. The trial court committed reversible error in failing and refusing to enter summary judgment in favor of the union."

Additionally, pursuant to R.C. 2505.22, appellee sets forth a cross-assignment of error:

"I. The trial court committed reversible error by denying Mr. Gromnicki's motion to dismiss the amended complaint."

Since appellee's cross-assignment of error raises a threshold issue, we address that assignment of error first.

■ Appellee moved the trial court for dismissal on statute of limitations grounds. We review the trial court's denial of this motion *de novo*. See *T. Carroll Ents., Inc. v. Hammitt* (Oct. 9, 1998), Lucas App. No. L–98–1113, unreported, 1998 WL 703637. According to appellee, the six-year statute of limitations for oral contracts, and not the fifteen-year statute of limitations for written contracts, applies to this case. R.C. 2305.06, applicable to written contracts, provides:

"Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."

The statute of limitations for contracts not in writing is set out in R.C. 2305.07:

"Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."

Appellee contends that the trial court erred in denying his motion to dismiss and holding that the fifteen-year statute of limitations applied. Appellee contends that the document he signed, his membership card, is not enough to create a contract in writing because it does not set out the terms of the contract without reference to other sources.[2]

---

**2.** The membership card that appellee signed read:

"I, Edmund Gromnicki, in the presence of members of the International Brotherhood of Electrical Workers, promise and agree to conform to and abide by the Constitution and laws of the I.B.E.W. and its Local Unions. I will further the purposes for which the I.B.E.W. is instituted. I will bear true allegiance to it and will not sacrifice its interests in any manner."

Appellee relies on *Claxton v. Mains* (1986), 33 Ohio App.3d 49, 514 N.E.2d 427 to support his contention that the statute of limitations for oral contracts, R.C. 2305.07, applies to this case. In that case, the Franklin County Court of Appeals was called upon to determine whether a contract that did not specify the defendant's total monetary obligation to the plaintiff without reference to supplementary evidence was a written contract within the meaning of R.C. 2305.06. The court held that such a contract was a written contract, despite the fact that it did not on its face set out the total monetary obligation, since it specifically set out the parties' rights and duties to one another. The court distinguished that case from cases where the purported written contract arose out of abbreviated commercial forms that did not in any manner specify the obligations of the parties. See *Rudolph Bros. v. Husat* (1961), 187 N.E.2d 190, 25 O.O.2d 376, 90 Ohio Law. Abs. 1 (a sales slip); *Regina Apts. v. Village Green* (1978), 60 Ohio App.2d 345, 14 O.O.3d 301, 397 N.E.2d 420 (checks). In both of those situations, the court in *Claxton* reasoned, supplementary evidence was required to establish the *existence* of the terms of the contract. *Claxton,* 33 Ohio App.3d at 51, 514 N.E.2d at 428–429. Nevertheless, the court in *Claxton* stated its holding more broadly than its reasoning:

"We hold that in order for an action to come within the statute of limitations governing actions under R.C. 2305.06, the written instrument must clearly define the unilateral or bilateral obligations of the parties without reference to supplemental evidence to *establish the terms* of the agreement, contract, or promise." (Emphasis added.) *Id.*

We interpret *Claxton* as holding that a contract does not come within the fifteen-year limitations period when the writing does not on its face either contain the terms of the contract or contain a reference to the existence of terms set out in another document.

In this case, the membership card referred to the union's constitution and laws. Therefore, the existence of the terms was apparent from the writing itself. The fact that the contract comprised more than one document is irrelevant. See *Brown's Run Country Club v. Brown* (Oct. 2, 1995), Butler App. No. CA95–03–048, unreported, 1995 WL 577650 (noting that written contracts often consist of more than one document); Restatement of the Law 2d, Contracts, (1981) 342, Section 132 (for purposes of satisfying the statute of frauds, a memorandum may consist of several writings provided that one writing is signed and the several writings clearly relate to one another). For these reasons, we conclude that the membership card signed by appellee, which referred to the union's constitution and laws, was a contract in writing for purposes of R.C. 2305.06; therefore, the trial court correctly held that the instant case was not time-barred. The appellee's cross-assignment of error is not well taken.

Appellant's assignments of error challenge the trial court's ruling on the parties' cross-motions for summary judgment. We review the trial court's ruling on the summary judgment motions *de novo*. *Conley–Slowinski v. Superior Spinning* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991, 992–993. A movant is entitled to summary judgment pursuant to Civ.R. 56(C) when the movant demonstrates:

"[T]hat there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party." *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 617, 687 N.E.2d 735, 743.

Appellant's first five assignments of error require this court to determine the date on which the union-member relationship terminated. Appellee contends that he terminated his relationship with the union on October 1, 1989, when he intentionally failed to pay his dues. Therefore, according to appellee, he was not a union member at the time of the alleged misconduct, and he likewise was not a member on January 3, 1990, the date he was charged, since he had been suspended on January 1, 1990. The union, on the other hand, contends that appellee was a union member until he was dropped from the union rolls on March 31, 1990, after he had been in arrears on his dues payments for a full six months.

To determine when the union-member relationship terminated, we turn to the union's constitution. We begin by noting that provisions in a union's constitutions and bylaws that "define punishable conduct and establish the procedures for internal trial and appeal, constitute a contract between the union and its members." *Internatl. Bhd. of Elec. Workers v. Smith* (1992), 76 Ohio App.3d 652, 660, 602 N.E.2d 782, 787, citing *Natl. Labor Relations Bd. v. Allis–Chalmers Mfg. Co.* (1967), 388 U.S. 175, 182, 87 S.Ct. 2001, 2007–2008, 18 L.Ed.2d 1123, 1129. Therefore, according to the United States Supreme Court, " '[t]he court's role is but to enforce the contract.' " *Allis–Chalmers*, 388 U.S. at 182, 87 S.Ct. at 2008, 18 L.Ed.2d at 1129, quoting Summers, The Law of Union Discipline: What the Courts Do in Fact (1960), 70 Yale L.J. 175, 180.

The relevant provisions of the union's constitution provide:

"ARTICLE XXIII      MEMBERS IN ARREARS

" * * *

"Sec. 3. Any member indebted to his L.U. [local union] for three months' dues, or having any past due indebtedness to the I.B.E.W. for dues or assessments, shall stand suspended, and the L.U. may refuse to accept dues from any member who is indebted to it. Such member cannot be reinstated until all indebtedness has been paid, unless waived by the L.U. However, dues cannot be waived.

" * * *

"Sec. 4. Any member indebted to his L.U. for six (6) months' full dues shall be dropped from membership by the F.S. and cannot become a member in good standing again in the I.B.E.W. except by joining as a new member.

" * * *

"Sec. 5. Members in arrears forfeit all rights and previous standing in the I.B.E.W. and if reinstated, their continuous good standing and benefits shall date only from the time of their reinstatement. However, they shall retain their former card number."

"ARTICLE XIV    REINSTATEMENT OF MEMBERS

"Sec. 1. Any member suspended for being in arrears for three (3) months, but less than six (6) months, may apply for reinstatement."

The constitution specifically sets out the consequences for nonpayment of dues, and immediate ouster from the union is not one of the consequences. Thus, appellee's contention that he ceased to be a member of the union on October 1, 1989, when he did not make a required dues payment, is not well taken.

While appellant does not dispute that the constitution is silent as to how a member may voluntarily withdraw, both common sense and federal law dictate that any reasonable method of conveying an intent to resign is sufficient. See *Internatl. Bhd. of Boilermakers, etc. v. Local Lodge D129 of the Cement, Lime, Gypsum & Allied Workers Division of the Internatl. Bhd. of Boilermakers, etc.* (C.A.2, 1990), 910 F.2d 1056, 1060–61; *Tile, Marble, Terrazzo, Finishers, Shopworkers & Granite Cutters Internatl. Union AFL–CIO v. Tile, Marble, Terrazzo, Helpers & Finishers Local 32, etc.* (C.A.3, 1990), 896 F.2d 1404, 1412–13. Thus, appellee remained a member after October 1, 1989, and he was a member at the time of the alleged misconduct in the fall of 1989.

Appellant contends that appellee, in fact, remained a member until March 31, 1990, when appellant formally dropped appellee from its membership rolls. The plain language of the constitution supports this contention. A fair reading of that document reveals that an individual remains a member even after suspension for nonpayment of dues. Such a member is not, apparently, a member in good standing, but is a member nonetheless. A "member in arrears," as such a member is called, retains one important union benefit: the right to apply for reinstatement upon full payment of dues. According to the plain language of the constitution, a member in arrears remains a member until the union drops him from its rolls after the member has been in arrears a full six months. Therefore, we hold that appellee remained a member until he was formally dropped from the union rolls on March 31, 1990; he was thus a member at the time of the alleged misconduct and a member at the time that he was charged, tried, and fined.

Appellee relies heavily on an Ohio Eleventh District Court of Appeals case for the proposition that a suspended member is not a member subject to discipline. See *Local Union 673, Bhd. of Elec. Workers v. Markell* (1989), 64 Ohio App.3d 217, 580 N.E.2d 1150. In that case, as in this one, the member ceased paying dues but did not notify the union that he wished to resign his membership. After he was suspended for nonpayment, but before he was dropped from the membership rolls, the member was observed performing nonunion work and was charged for doing so. The member in *Markell* contended that he was not a member subject to discipline after he was suspended. Both the trial court and the court of appeals agreed. In reaching its decision, the court of appeals relied on the definition of "member" in the Labor–Management Reporting and Disclosure Act of 1959 ("LMRDA"). See Section 402(*o*), Title 29, U.S. Code ("402(*o*)"). That section provides:

"For the purposes of this chapter—

" * * *

"(*o*) 'Member' or 'member in good standing', when used in reference to a labor organization, includes any person who has fulfilled the requirements for membership in such organization, and who neither has voluntarily withdrawn from membership nor has been expelled or suspended from membership after appropriate proceedings consistent with lawful provisions of the constitution and bylaws of such organization."

■ We hold that the definition of "member" in 402(*o*) is not applicable to our determination of whether appellee was a member subject to discipline after suspension. First, the definition of "member" in 402(*o*) is not a definition for all purposes; it is a definition of "member" only for purposes of Chapter 11 of the LMRDA. See Section 402, Title 29, U.S. Code. Unions may choose to define "member" differently in their own constitutions. Second, the use of the term "member" in Chapter 11 of the LMRDA is synonymous with "member in good standing." See Section 402(*o*), Title 29, U.S. Code. Apparently, Congress intended that only members in good standing, that is, members not suspended from their labor organizations, receive the protections afforded by the LMRDA. In appellant's constitution, "member" does not necessarily mean a member in good standing. The plain language of the constitution is clear that the term "member" can include a member who is in arrears and a member who is suspended, see Articles XXIII and XXIV, though a suspended member is not entitled to all of the benefits of union membership. Based on the above, we hold that the definition of member in 402(*o*) is not applicable to the question of whether a suspended member is subject to discipline by its union. We therefore disagree with the reasoning and holding in *Markell,* and we hold that appellee,

even while suspended, was a union member subject to discipline. For these reasons, appellant's first five assignments of error are well taken.

In its sixth assignment of error, appellant contends that the trial court erred in not granting summary judgment in appellant's favor, as no genuine issue of material fact precluded summary judgment in its favor. In the trial court, appellee contended that he was entitled to summary judgment and appellant was not because (1) appellee was not a member of the union subject to discipline, (2) appellant failed to follow its own procedures at the union trial, and (3) there was a genuine issue of material fact as to whether the fines appellant imposed upon appellee were unreasonable or arbitrary. In its decision, the trial court granted summary judgment to appellee, holding that appellee was not a member subject to discipline, but it did not make any findings regarding appellee's other two contentions. Since the trial court did not rule on these questions, we should not address them for the first time on appeal. See *Mills–Jennings v. Liquor Control Comm.* (1984), 16 Ohio App.3d 290, 293, 16 OBR 321, 323–324, 475 N.E.2d 1321, 1324–1325; *United Auto Workers, 1112 v. Philomena* (1998), 121 Ohio App.3d 760, 791–792, 700 N.E.2d 936, 956–958. Accordingly, we cannot find that the trial court erred in failing to grant appellant summary judgment, and the sixth assignment of error is not well taken.

On consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Wood County Court of Common Pleas is reversed and remanded for further proceedings consistent with this decision. Finding our decision to be in conflict with the Ohio Eleventh District Court of Appeals in *Local Union 673, Bhd. of Elec. Workers v. Markell* (1989), 64 Ohio App.3d 217, 580 N.E.2d 1150, we hereby certify the record of this matter to the Supreme Court of Ohio to determine whether a union member who is suspended for unpaid fines is a member subject to discipline by the union Court costs assessed to appellee.

*Judgment reversed.*

HANDWORK and MELVIN L. RESNICK, JJ., concur.