[Cite as *Wells Fargo Bank, N.A. v. Michael*, 2013-Ohio-2545.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A., | ) | CASE NO. 12 BE 26 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| DALE AND DEBORAH MICHAEL, | ) | |
| | ) | |
| DEFENDANTS, | ) | |
| | ) | |
| JAMES AND NORMA FLEAGANE, | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas Court, Case No. 10CV399.

JUDGMENT: Reversed and Remanded.

APPEARANCES:
For Plaintiff-Appellant: Attorney Amelia Bowser
Attorney David VanSlyke
300 East Broad Street, Suite 590
Columbus, Ohio 43215

For Defendants-Appellees: Attorney Michael McCormick
46457 National Road West
St. Clairsville, Ohio 43950

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

Dated: June 10, 2013

VUKOVICH, J.

{¶1} Plaintiff-appellant Wells Fargo Bank, N.A., appeals the decision of the Belmont County Common Pleas Court that denied in part its motion for summary judgment against defendants-appellees James and Norma Fleagane. The decision to grant in part and deny in part the motion for summary judgment permitted Wells Fargo to foreclose on the real estate located at 55022 Ridge Road, Bellaire, Ohio, which was owned by Dale and Debra Michael. However, the trial court determined that the right to foreclose was subject to the Fleaganes' *repurchase option* and the *right of first refusal* that they acquired when they sold the property to Dale and Debra Michael.

{¶2} Two issues are raised in this case. The first is whether the *repurchase option* runs with the land and can be invoked by the Fleaganes following foreclosure. The second issue is whether the *right of first refusal* can be invoked following foreclosure at the Sheriff's sale to acquire the property for the same amount as the highest bidder.

{¶3} For the reasons discussed below, we hold that the *repurchase option* does not run with the land. As for the *right of first refusal*, given the specific language used in the covenant, foreclosure is not a triggering event. Or in other words, the Fleaganes do not have a *right of first refusal* at the Sheriff's sale. Therefore, the trial court erred when it did not grant Wells Fargo's motion for summary judgment in its entirety. The decision of the trial court is hereby reversed and the cause is remanded.

<u>Statement of the Case</u>

{¶4} The Michaels purchased real property located at 55022 Ridge Road, Bellaire, Ohio, from the Fleaganes on February 20, 2002. The deed contains two covenants – a *repurchase option* and a *right of first refusal*.

{¶5} In April 2003, the Michaels took out a mortgage with Novastar Mortgage that was secured by the property located at 55022 Ridge Road, Bellaire, Ohio. That mortgage was later assigned to Wells Fargo. Thus, Wells Fargo had knowledge of the *repurchase option* and the *right of first refusal* when it acquired the mortgage.

{¶6} The Michaels eventually defaulted on the mortgage and Wells Fargo initiated foreclosure proceedings. The original complaint did not name the Fleaganes as defendants.

{¶7} The Michaels did not file an answer to the complaint, which resulted in Wells Fargo moving for default judgment. The trial court granted this motion, however, in March 2011, Wells Fargo moved to vacate the default judgment award. Wells Fargo asked for vacation because all parties in interest had not been named in the original complaint. The trial court granted the motion. 03/15/11 J.E.

{¶8} Thereafter, Wells Fargo filed an amended complaint and added the Fleaganes as defendants. The Fleaganes filed an answer asserting the *repurchase option* and the *right of first refusal* as affirmative defenses to the action.

{¶9} Wells Fargo then filed a motion for summary judgment against the Fleaganes and the Michaels. It claimed that the Michaels are in default on the loan and it has the right to foreclose. As to the Fleaganes, Wells Fargo claimed that the *repurchase option* and *right of first refusal* did not run with the land and were not enforceable in the context of foreclosure.

{¶10} The Fleaganes filed an answer brief arguing that the right of first refusal was not extinguished by foreclosure. It cited an Ohio case, *National City Bank v. Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981, 936 N.E.2d 539 (10th Dist.), in support of its position. Wells Fargo replied once again asserting that the *right of first refusal* was not enforceable and did not run with the land.

{¶11} After reviewing the parties' arguments, the trial court granted Wells Fargo's motion for summary judgment against the Michaels. However, as to Wells Fargo's motion for summary judgment against the Fleaganes, it granted the motion in part and denied it in part. The trial court explained that while Wells Fargo is entitled to foreclosure on the real estate, that entitlement is subject to the preemptive rights of the Fleaganes. Thus, the trial court held that both the *repurchase option* and the *right of first refusal* survived foreclosure. Therefore, it determined that if Wells Fargo purchased the property at the foreclosure sale it would not be a bona fide purchaser and the Fleaganes at that point could invoke either their *repurchase option* or the *right of first refusal.* 06/15/12 J.E.

{¶12} Wells Fargo appeals from that decision claiming that the right of repurchase does not survive the foreclosure and that the *right of first refusal* is not invoked in the foreclosure setting.

<u>Standard of Review</u>

{¶13} Both assignments of error address the trial court's summary judgment decision and thus, the same standard of review is used. In reviewing a summary judgment award, we apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.,* 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (7th Dist.1998). Thus, we apply the same test as the trial court. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming,* 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994).

{¶14} Both issues raised here are legal issues. There is no dispute as to the facts.

**REPURCHASE OPTION**
<u>First Assignment of Error</u>

{¶15} "The trial court erred in denying appellant's motion for summary judgment as to the rights of appellees to repurchase the property."

{¶16} Wells Fargo presents four arguments as to why the *repurchase option* is not enforceable against it. The first three arguments that will be addressed are procedural in nature. The last argument to address is a merit argument as to why the *repurchase option* does not survive foreclosure.

{¶17} The first procedural argument is that the Fleaganes should have filed a cross-claim against the Michaels to enforce the *repurchase option*.

{¶18} This argument lacks merit. The language of the repurchase option permits the Fleaganes to force the Michaels to sell them the property for a given amount and with the proper notice. The record is devoid of any indication that the Fleaganes have attempted to exercise their option. Without evidence of an attempt to invoke the option, a finding that the Michaels breached the option would not be

warranted; the Michaels only obligation is to sell the property to the Fleaganes when they provide the Michaels with 120 days notice of their intent to repurchase the property. There is no breach for failure to resell the property until that triggering event occurs. Accordingly, if the Fleaganes invoked the option and the Michaels refused to sell the property to the Fleaganes in accordance with those terms, then a cross-claim could be warranted. However, Civ.R. 13(G) provides that cross-claims are permissive, not compulsory. *Fifth Third Bank v. Hopkins*, 177 Ohio App. 3d 114, 2008-Ohio-2959, 894 N.E.2d 65, ¶ 12 (9th Dist.). Therefore, the Fleaganes were not required in this suit to file the cross-claim against the Michaels. They could have brought another suit. Thus, for those reasons, Wells Fargo's claim that the Fleaganes have waived their *repurchase option* because the Fleaganes have not filed a cross-claim against the Michaels fails.

{¶19} The next procedural issue is the trial court's determination that the *repurchase option* is not subject to the statute of frauds.

{¶20} The statute of frauds is codified in R.C. 1335.04, which states:

No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law.

{¶21} The *repurchase option* is found in the deed to the real property. The Fleaganes (sellers) signed the deed, but the Michaels (buyers) did not. The Michaels are the grantors of the right and the Fleaganes are the grantees. Since the Michaels did not sign the deed, Wells Fargo claims that the statute of frauds has not been met.

{¶22} The trial court, in concluding that the statute of frauds is not applicable, stated that there had been no legal issues raised as to whether a written contract exists between the Michaels and the Fleaganes, the original parties to the agreement. The court concluded that the language in the deed is notice to the world that such original agreement exists and that the right of repurchase exists. 06/15/12 J.E.

**{¶23}** The trial court's reasoning is adequate. No one is disputing that the Fleaganes conveyed the property to the Michaels. As the above quoted statute concerning the statute of frauds indicates such conveyance was required to be in writing. Both parties would have signed that conveyance since each would be under an obligation to perform a certain act, i.e. the Fleaganes convey the land and the Michaels pay "valuable consideration". (General Warranty Deed states "valuable consideration" was given for the property). Thus, such contract for the conveyance of the real estate would have met the statute of frauds. It has been explained that in order to satisfy the statute of frauds a writing may consist of one document or a series of related and integrated documents. *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Gromnicki,* 139 Ohio App.3d 641, 645, 745 N.E.2d 449 (6th Dist.2000). The contract for the conveyance of real property taken in conjunction with the deed indicating that the Fleaganes conveyed the property to the Michaels would satisfy the statute of frauds for purposes of the *repurchase option* being valid and enforceable under the statute of frauds. Those two documents are related and logically integrated by identifying the same property.

**{¶24}** Therefore, for those reasons the statute of frauds argument fails.

**{¶25}** The last procedural argument concerns Wells Fargo's assertion that the Fleaganes should have filed a counterclaim against it asserting the *repurchase option*. Instead, the Fleaganes answered and asserted the *repurchase option* as an affirmative defense. Wells Fargo claims that since it was not properly asserted as a counterclaim and was instead improperly asserted as an affirmative defense, the trial court should have found that the Fleaganes waived their right to assert that they could repurchase the property according to the terms of the covenant.

**{¶26}** We disagree. Civ.R. 8(C) states, "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation." Therefore, it does not matter whether the *repurchase option* should have been raised as a counterclaim or an affirmative defense. The trial court was permitted to consider the option regardless of its designation. Any argument to the contrary fails.

**{¶27}** Consequently, given all the above, all procedural arguments fail. Thus, our attention turns to the merit argument, whether, considering the language of the repurchase option, the option runs with the land and survives foreclosure.

**{¶28}** The repurchase option in the deed reads as follows:

1. The Sellers [the Fleaganes] shall have the prior right to purchase or repurchase this property for the sale price of $275,000.00, plus the verifiable cost of improvements made to the premises by the purchasers; in no event shall the total repurchase price exceed the sum of $425,000.00 unless mutually agreed to by the parties. Sellers shall have this right for a period of 50 years to the date of this deed, and this right shall be enforceable by the Sellers, or their direct descendants, or assigns. Sellers shall give Purchasers 120 days notice of their intention to exercise this right.

02/22/02 Deed, Exhibit B.

**{¶29}** This repurchase option, although based in contract, was memorialized in a deed and thus, acts as a deed restriction or covenant. *See Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981, at ¶ 13-14. Covenants are either restrictive or personal in nature. *Id.* at ¶ 14. Restrictive covenants run with the land and bind subsequent purchasers, if the purchaser had notice of the covenant. *Id.* Personal covenants, on the other hand, typically do not run with the land. *Id.*

**{¶30}** In order for a restrictive covenant to run with the land, three factors must be met. *Id.* at ¶ 13-14. The first is that there must be an intent for the covenant to run with the land. *Id.* at ¶ 14. The second is that the covenant must touch and concern the land. *Id.* And the third is that the parties are in privity in contract. *Id.*

**{¶31}** Here, the *repurchase option* is not a restrictive covenant that runs with the land; rather it is a personal covenant. This is evident by the fact that the language of the *repurchase option* does not show an intent for the covenant to run with the land. The language of the repurchase option gives that right to the Fleaganes, their descendants, or assigns. However, it does not state that the option is to be exercised against anyone other than the Michaels. The language employed shows a knowledge of how to extend the right to the Fleaganes' descendants or

assigns, however, language to extend this right to anyone the Michaels may sell this property to was not used. Thus, the first factor used to determine whether a covenant runs with the land is not met. Consequently, this covenant does not run with the land, but rather is a personal covenant.

{¶32} That said, our sister district in *Welch*, relying on a common pleas court decision, stated that in some instances personal covenants can be enforceable against subsequent purchasers, provided that the purchaser had notice of the covenant. *Id.* at ¶ 14, citing *Gillen-Crow Pharmacies*, 8 Ohio Misc. 47, 220 N.E.2d 852 (1964) (Personal covenants are enforceable, in equity, if the subsequent purchaser had notice of the covenant.). The Tenth Appellate District reasoned that no injustice results by "enforcing a valid deed restriction against a subsequent purchaser when that purchaser had knowledge of the restriction." *Id.* at ¶ 15.

{¶33} In this instance, it is undisputed that Wells Fargo had notice of the *repurchase option*. Based on that fact and the reasoning in the *Welch* decision, the trial court concluded that the *repurchase option* is enforceable against Wells Fargo.

{¶34} We cannot agree with the trial court's conclusion. While in some instances a personal covenant may be enforceable against a subsequent purchaser that has notice of the covenant, in this instance that is not the case. The *Welch* decision specifically demonstrates that it is the language used in the covenant that specifies when the covenant is triggered. *See also Wargo v. Henderson*, 7th Dist. No. 08CO21, 2009-Ohio-2443. Welch addresses a *right of first refusal* and not a *repurchase option*. However, it is still instructive, because both are based in contract and thus, are governed by the language used in the covenant.

{¶35} In *Welch*, the deed at issue contained a *right of first refusal* that gave Gullet, the appellant, the *right of first refusal* to purchase the family home in Grove City, Ohio from her relative, Bob Spriggs, if he ever decided to sell or from his estate after his death. Spriggs had a mortgage on the property, which was not paid off prior to his death. The bank filed a foreclosure against Spriggs' estate and joined Gullet to the action. Until the foreclosure action, Gullet had no knowledge of her interest in the property, but upon learning of her right to purchase, she attempted to purchase the property by tendering the specified amount to the bank. The bank, however, refused

to sell to her. The bank argued that the *right of first refusal* was not invoked because the estate had not offered the property for sale. The appellate court disagreed, first stating that offering the property for sale is irrelevant given the certainty and inevitability of an estate sale. Secondly, it concluded that Gullet had notified the estate and the bank of her intention to exercise her right to purchase the property. The appellate court found that the triggering event for the *right of first refusal* in the language used in that covenant was Spriggs' death; it was not an offer for the sale of the property that triggered the right of first refusal. *Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981.

{¶36} Here, for the same reasons discussed above as to why the *repurchase option* does not run with the land, we conclude that it also does not apply to any subsequent purchasers, even purchasers with knowledge of the covenant. While the *repurchase option* does extend to the Fleagane's direct descendants and assigns, the language of the covenant only applies to the Michaels, not to their assigns. Subsequent purchasers with knowledge of the covenant would not anticipate that they would be bound by the covenant because of the language of the covenant. Therefore, if the property is sold, the new buyers are not bound by that covenant; the specific language of this covenant indicates that it does not apply to subsequent purchasers.

{¶37} Furthermore, we also note that given the language of the *repurchase option* in the case sub judice, foreclosure is not a triggering event. Rather, the triggering event is the Fleaganes' desire to repurchase the property and 120 days notice of their intention to exercise this right. There is nothing in the record to suggest that these factors have been met. However, as Wells Fargo admits, the Fleaganes could exercise this option, even at this point, and avoid foreclosure, provided they deal with the Michaels' mortgage. *Wargo*, 2009-Ohio-2443. That said, as explained above, the repurchase option does not extend past the foreclosure.

{¶38} In conclusion, this assignment of error has merit. While Wells Fargo's statute of frauds, cross-claim and counterclaim arguments fail, its argument that the trial court incorrectly determined that the *repurchase option* is enforceable against it following foreclosure has merit. Accordingly the trial court's decision regarding the

*repurchase option* is reversed. Once foreclosure has been granted, the Fleaganes cannot exercise their option to repurchase the property.

## Right of First Refusal
### Second Assignment of Error

**{¶39}** "The trial court erred in denying appellant's motion for summary judgment as to appellees right of first refusal to purchase the subject property."

**{¶40}** As discussed above, in determining whether a covenant runs with the land and what event triggers that covenant we must look to the language of the covenant.

**{¶41}** The right of first refusal in the deed provides:

> 2. Sellers [the Fleagane's] shall also have the right of first refusal; the Purchasers [the Michael's] shall present to the Sellers any written contract binding all parties for the sale of this property, and resulting from an "arms-length" negotiation, which Purchasers receive for the sale of this property, and for which the Sellers shall have 30 days within which to elect to purchase the property at the price offered by the prospective buyer. They shall then have an additional 30 days to close the transaction.

02/22/02 Deed, Exhibit B.

**{¶42}** Regardless of whether this covenant runs with the land, the language of the covenant indicates that foreclosure is not an event that triggers the Fleaganes *right of first refusal*. While the "any written contract" language used in this covenant, when considered by itself, may indicate that a foreclosure sale would invoke the *right of first refusal*, this *right of first refusal* also requires an "arms-length" negotiation. A foreclosure sale is not derived from an "arms-length" negotiation because it is a forced sale, not a voluntary sale:

> A judicial sale of property upon foreclosure occurs only when the owner has defaulted on the debt. The owner has the option of selling this or other property to pay the moneys due. In the instant case, the owner did not make her own sale. And because she has made a legally binding agreement that the realty should secure the debt, she is

subject to the statutory foreclosure and sale procedure. That procedure is designed to protect her interests as well as the creditor's. One respect in which it does so is by its limitations on the acceptable sale price. A forced sale by its very nature is less likely to bring the full value of realty than an arms-length transaction. The statute prevents the sale from becoming a sacrifice, by requiring that it return at least two thirds of the appraised value, R.C. 2329.20.

*Advance Mortgage Corp. v. Novak.*, 8th Dist. No. 36267, 1977 WL 201469 (June 9, 1977).

**{¶43}** Therefore, foreclosure is not a triggering event for this *right of first refusal*.

**{¶44}** Our conclusion that foreclosure does not, in this instance, trigger the *right of first refusal* is not in direct conflict with the *Welch* decision. The *Welch* court did not summarily hold that foreclosure triggers any *right of first refusal*. Rather, the court indicated that considering the language of the covenant at issue in that case, the covenant would be triggered either when Spriggs died or when the property was offered for sale. *Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981, ¶ 16. Spriggs died. Therefore, the *right of first refusal* was triggered. *Id.* at ¶ 17. The court did not determine whether foreclosure is an offer for sale that triggered the *right of first refusal* as was written in that deed.

**{¶45}** Furthermore, decisions from other states support our conclusion that when a *right of first refusal* contains language requiring an arms-length negotiation and/or voluntary sale, foreclosure is not a triggering event. *Tadros v. Middlebury Medical Center, Inc.,* 263 Conn. 235, 820 A.2d 230 (2003) (Foreclosure was not an event that triggered the *right of first refusal* because the language used in the covenant required the grantee to "form the intention" to sell the property and to accept a bona fide offer to purchase. Those requirements were deemed to require a voluntary sale, not an involuntary sale); *Huntington National Bank v. Cornelius,* 80 A.D.3d 245, 914 N.Y.S.2d 327 (N.Y.App.Div.2010) (*Right of first refusal* required the grantee to "offer" the property for sale. "Offer," as used in the covenant, was intended to cover a conscious and voluntary choice by the grantee to make the

property available for sale. Thus, since foreclosure is an involuntary process, the *right of first refusal* could not be invoked during foreclosure); *Benefit Realty Corp. v. City of Carrollton,* 141 S.W.3d 346 (Tex.App.2004) (*Right of first refusal* only applied to a voluntary sale and taking of property by condemnation is involuntary; therefore, *right of first refusal* not triggered); *Pearson v. Schubach,* 52 Wash.App. 716, 763 P.2d 834 (1988) (Court-ordered sale of property to satisfy judgment against lessor was involuntary sale and did not trigger lessee's *right of first refusal* since agreement required that lessor be a "willing" seller of the property); *Henderson v. Millis,* 373 N.W.2d 497 (Iowa 1985) (Given language in agreement, *right of first refusal* could not be exercised in context of foreclosure sale).

**{¶46}** Although we hold that, in this case, foreclosure was not a triggering event for this *right of first refusal*, our decision does not stand for the proposition that foreclosure can never be a triggering event for a *right of first refusal*. The covenant could be drafted in a manner that renders foreclosure a triggering event for the *right of first refusal. See also Cornelius*, 80 A.D.3d at 249. However, in this instance the covenant was not drafted in that manner.

**{¶47}** That said, the language of the covenant was not the only reasoning the *Welch* court considered when it held that the *right of first refusal* was triggered. It also acknowledged that the bank had notice of the covenant and the effect that of not allowing the *right of first refusal* in such situation would have on preemptive rights:

> The trial court's analysis and reasoning must also be rejected because it would set a precedent that in effect extinguishes preemptive rights altogether: Anytime a person wanted to buy a property that was subject to preemptive rights held by another, the interested buyer could simply take a mortgage from the present owner and then foreclose (or take a deed in lieu of foreclosure), which would circumvent the original grantor's intent.

*Welch*, 188 Ohio App.3d 641, 2010-Ohio-2981, at ¶ 18.

**{¶48}** While the above may be a valid point, we cannot ignore the plain language of the covenant. The Michaels and the Fleaganes were the parties that agreed to that language. If they wished for foreclosure to be a triggering event for

the *right of first refusal* they could have drafted it in a manner that allowed for that situation. However, it was not drafted in that manner and it would be unjust to read words into the covenant that are not there.

{¶49} Consequently, for the above stated reasons this assignment has merit. The trial court erred in determining that the *right of first refusal* survives foreclose.

## Conclusion

{¶50} In conclusion both assignments of error have merit. The *repurchase option* does not run with the land and does not survive foreclosure. That said, prior to foreclosure the Fleaganes can exercise this option as long as they deal with the Michaels' mortgage. As for the *right of first refusal*, given the specific language used in covenant, foreclosure is not a triggering event. Therefore, the Fleaganes cannot invoke their right of first refusal at the Sheriff's sale. Consequently, the trial court erred when it did not grant Wells Fargo's motion for summary judgment in its entirety. The decision of the trial court is hereby reversed and the cause is remanded.

Donofrio, J., concurs.
Waite, J., concurs.