SURBER ET AL. *v.* WOODRUFF, ADMR. OF
ESTATE OF FRYE, DECEASED.

(No. 83-CV-0194—Decided
August 12, 1983.)

Court of Common Pleas of
Clermont County.

*Mr. Douglas J. Bradford,* for plaintiff.

*Mr. Gary Ostendarp,* for defendant.

RINGLAND, J. The complaint in this case was filed by plaintiffs, James E. and Betty Surber, on March 10, 1983.
On April 7, 1983, defendant, Rev.

Alvin B. Woodruff, Administrator of the Estate of Hurdes Frye, filed his motion to dismiss pursuant to Civ. R. 12(B)(6) for failure to state a claim upon which relief can be granted, alleging accord and satisfaction of the plaintiffs' claims.

The matter came to be heard by this court on June 16, 1983, at which time the court requested that counsel submit written memoranda to supplement the oral argument. The court after notification to the parties also treated their motion as a motion for summary judgment.

Defendant filed his memorandum in support of motion to dismiss on June 30, 1983. On July 15, 1983, plaintiffs filed their reply memorandum in opposition to motion to dismiss.

The court finds that on August 7, 1981, defendant's decedent, Hurdes Frye, and plaintiff, James Surber, were involved in an automobile collision. Plaintiffs' complaint alleges that defendant's decedent was negligent. Frye died on September 2, 1982. On March 8, 1983, plaintiffs executed a release in favor of Frye, and, *inter alia,* his agents, heirs, and the executor of his estate from all liability, in exchange for which each plaintiff was paid a sum of money.[1]

Plaintiffs contend they may file a complaint after signing a release based on R.C. 2117.05. This section sets forth the provisions for probate court authorization for an executor's compromise and settlement of claims against the estate. Plaintiffs assert that because of the lack of court authorization, the release is invalid and does not bind the estate, and that, therefore, their bringing of the action is allowable.

Plaintiffs argue additionally that a release of an administrator or executor is not a release of the estate because an administrator is simply an agent of the estate. They assert that according to Ohio law an agent may effectively execute a binding release as to his principal only where there is express authorization; that R.C. 2117.05 provides for such authorization; and that in the absence of an R.C. 2117.05 authorization, the "agent"-administrator's release does not bind the "principal" estate. Further, plaintiffs argue that the written release must be strictly construed against the preparer of the document, the defendant-administrator; and that because the document did not expressly release the *estate,* plaintiffs may yet pursue the estate on their claims.

Defendant argues that the intent of R.C. 2117.05 is to protect the fiduciary and the estate, and that plaintiffs do not have standing to complain of the lack of an R.C. 2117.05 authorization of the settlement. Defendant asserts that the legal existence of the decedent shifts to the administrator, so that he is not merely an agent of the estate, but rather "stands in the shoes of the decedent." Finally, the defendant asserts that the release instrument is not to be strictly construed, but rather interpreted broadly to encompass the estate as well as the administrator of the estate.

This is a case of first impression as to the issue of whether prior approval of a compromise or settlement is essential for the validity of the parties' agreement. The court has therefore considered comparable provisions and case law from other states for guidance to ascertain whether prior court authorization is a requisite for validity.

Three states with legislation comparable to R.C. 2117.05, and case law construing their statutes, are Alabama, Kentucky, and New Hampshire.

---

[1] The release, being on a pre-printed form, is worded as follows: "* * * [plaintiffs] hereby * * * release, acquit and forever discharge Hurdes Frye and his, her, their, or its agents, servants, successors, heirs, executors, administrators and all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action * * *."

Section 43-2-390 of the Code of Alabama is a statute similar to R.C. 2117.05. Its predecessor, similar in terms to Section 43-2-390, was held *not* to be mandatory in requiring prior court approval of a compromise effected by an administrator in settlement of a claim for the settlement or compromise to be valid and enforceable. *Arledge* v. *Ellison* (1945), 247 Ala. 190, 23 So. 2d 389. In *Arledge,* the Supreme Court of Alabama held that an estate administrator may compromise or settle claims without prior court authority if he acts in a bona fide, good faith manner. *Id.* at 391. The court found that the purpose of the statute is to protect the administrator and that the statute does not abrogate the common-law rule that an executor may release, compromise or settle any claims as if he himself were the estate of the decedent. *Id.*

Section 395.240 of the Kentucky Revised Statutes is a statute also similar to the Ohio provision. Its predecessor, like the Alabama statute, was held to be a non-mandatory provision. The Kentucky statute, by its express terms, seemed to require court authorization of a compromise in order for it to be valid and enforceable. However, the Supreme Court of Kentucky, in *Pullins' Admr.* v. *Smith* (1899), 106 Ky. 418, 50 S.W. 833, held that where no prior court authorization of a settlement agreement is sought by an administrator, the agreement will nonetheless be effective and valid so long as it appears to have been beneficial to the estate and was a reasonable and proper action for the administrator to take. The successor statute is to be similarly construed. (See K.R.S. 395.240.)

Section 556.27 of the New Hampshire Revised Statutes is also quite similar to Ohio's R.C. 2117.05, in providing for probate court authorization to an administrator for the settlement of claims against the estate. In *Burtman* v. *Butman* (1947), 94 N.H. 412, 54 A. 2d 367, the Supreme Court of New Hampshire found the predecessor statute (R.L.ch. 355, Section 27), to be permissive rather than mandatory. The court found that the intent of the legislature in enacting the provision was to protect personal representatives in the discharge of their fiduciary duties. The court determined that the statute provides a means of protecting an executor or administrator from liability, but that court approval is not a prerequisite to the validity and enforceability of a reasonable and beneficial settlement or compromise.

These cases construe legislation comparable to R.C. 2117.05 as permissive, rather than mandatory. Thus where an administrator or executor of a decedent's estate effects a bona fide, reasonable and beneficial settlement or compromise of a claim against the estate, the fact that he did not first secure probate court authorization for the compromise of the claim does not render the compromise agreement invalid and unenforceable. So long as the settlement of the disputed claim is reasonable and of benefit to the estate, the agreement is valid. (See, also, 34 Corpus Juris Secundum 344-345, Section 469: a personal representative may settle claims against the estate if he acts prudently and in good faith.)

It follows, therefore, that the argument urged by plaintiffs, that the defendant's release and exchange of consideration is invalid as being without court authority, is without merit. The compromise agreement releasing decedent's estate effected by defendant was reasonable and beneficial to the estate and therefore valid and enforceable.

Furthermore, certain sections of Ohio probate law are considered remedial in that they aid in the early settlement of a decedent's affairs and should be liberally construed. 22 Ohio Jurisprudence 2d 367, Executors and Administrators, Section 4, citing *Miller* v. *Ewing* (1903), 68 Ohio St. 176 [22 O.O.3d 276]. R.C. 2117.05 is such a provision. To deny the validity and enforcement of a compromise agreement entered into voluntarily would hinder the

speedy settlement of the decedent's affairs. The provisions for court approval of a compromise agreement in R.C. 2117.05 should be construed liberally, as permissive rather than mandatory, so as to assure such speedy estate settlement.

The plaintiffs additionally have argued that because the administrator is an "agent" of the estate he represents, he cannot bind the estate (the "principal") to a release without express court authorization under R.C. 2117.05.

The plaintiffs do not cite, and the court has not found, any case law in Ohio which holds that the personal representative of an estate is an agent of the estate which is the principal. Ohio case law does indicate, however, that an administrator is an agent or officer of the court. (See 32 Ohio Jurisprudence 3d 450, Decedents' Estates, Section 991, citing *Macey* v. *Dudas* [App. 1954], 70 Ohio Law Abs. 312.) The administrator also stands first as a trustee to the estate's creditors and second as a trustee to the legatees and heirs. 32 Ohio Jurisprudence 3d 453, Decedents' Estates, Section 994.

Under Ohio law an agency relationship is a consensual relationship (between two persons) where the agent has the power to bind the principal, and the principal has the right to control the agent. The existence of an agency relationship depends primarily upon the right of the principal to control the agent. *Arnson* v. *General Motors Corp.* (N.D. Ohio 1974), 377 F. Supp. 209. (See, also, 3 Ohio Jurisprudence 3d 15, Agency, Section 1.) Technically, under the Ohio definition of "agency," an administrator of an estate is not an "agent," as plaintiffs suggest, inasmuch as the estate cannot have a "right to control" the administrator. Insofar as any "right to control" the administrator is concerned, such a right would either be found to exist in the court or in the heirs or legatees, exercised, for example, through an action for removal or for breach of fiduciary duty.

The administrator or executor acts for others for the purpose of protecting the assets of the estate. 32 Ohio Jurisprudence 3d 450, Decedents' Estates, Section 991. In settling the decedent's affairs he does not act specifically and technically as the estate's agent, but rather as the personal representative of the decedent. 32 Ohio Jurisprudence 3d 453-454, Decedents' Estates, Section 995, citing *Service Transport Co.* v. *Matyas* (App. 1952), 63 Ohio Law Abs. 236. As the personal representative of the decedent, the administrator may adjust or settle by compromise any existing claim against the estate. 33 Ohio Jurisprudence 3d 443, Decedents' Estates, Section 1536, citing *Jackson* v. *O'Brannin* (1862), 14 Ohio St. 177. Ohio case law further provides that when a settlement of a claim against the estate is consummated, in the absence of fraud or mistake, it is binding upon the parties. *Gibbons* v. *Daykin* (App. 1939), 34 Ohio Law Abs. 480, cited in 33 Ohio Jurisprudence 3d 443, Decedents' Estates, Section 1536.

Plaintiffs' assertion that the compromise agreement is ineffective and invalid as unauthorized under agency principles, and that therefore the administrator's release is not a release of the estate he represents, is also without merit. The personal representative may compromise claims against the estate, as the representative stands in the shoes of the decedent. See *Baker* v. *McKnight* (1983), 4 Ohio St. 3d 125, quoting *Eberbach* v. *McNabney* (Ind. App. 1980), 413 N.E. 2d 958.

Plaintiffs additionally have urged that the release of the decedent, heirs, and administrator did not effectively release the decedent's estate because the release contract did not expressly name the *estate* as an entity to be released. The plaintiffs recite the settled principle of Ohio contract law that written documents are to be strictly construed against the preparer of the document. Plaintiffs assert that defendant is estopped from raising the release as a defense to the plaintiffs' claims because of the failure to include the

estate as an entity to be released from liability.

Under Ohio law, if an ambiguity exists in a written contract, a court may be called upon to construe and interpret the words and meaning of the contract. In an instrument where the language employed is clear and intelligible and suggests a single meaning, but some extrinsic fact or evidence creates the necessity for interpretation of a choice among two or more possible meanings, the instrument is said to have a latent ambiguity. See *American Druggists' Ins. Co.* v. *Equifax Inc.* (S.D. Ohio 1980), 505 F. Supp. 66; *Conkle* v. *Conkle* (1972), 31 Ohio App. 2d 44 [60 O.O.2d 144].

With regard to the release instrument executed by the plaintiffs and defendant, there is a latent ambiguity. The language releasing the parties named in the instrument is clear and the instrument suggests a single meaning. However, the extrinsic fact that the plaintiffs-releasors have pursued their claims against the estate itself, which was unnamed in the instrument, creates a necessity for interpretation as to whether the estate as a separate entity was or was not to be released by the instrument.

A creditor of an estate may release his claim against the estate by express agreement; where the agreement is in writing, the primary consideration in interpreting the instrument is to arrive at the intent of the parties. (See 34 Corpus Juris Secundum 359, Executors and Administrators, Section 477.) In arriving at the intent of parties to an agreement, as a general principle of contract law, the meaning given to an agreement to determine its legal effect is to be measured by objective standards; *i.e.,* " 'one is bound, not by what he subjectively intends, but by what he leads others reasonably to think that he intends.' " *Bach* v. *Friden Calculating Machine Co.* (C.A. 6, 1946), 155 F. 2d 361, 365, citing Corbin, Cardozo on the Law of Contracts, 52 Harv. L. Rev.

446; *Fuchs* v. *United Motor Stage Co.* (1939), 135 Ohio St. 509.

There is no doubt the defendant-administrator was quite taken by surprise when only two days after the plaintiffs' execution of the release he was faced with a lawsuit against the estate; it is doubtful or unreasonable that the administrator signed the release so that the estate could be sued two days later.

There is, however, insufficient evidence before the court as to the exact intent of the administrator in preparing the release. Under Civ. R. 56 the court cannot presume this intention. The defendant in his motion and attached affidavits has not provided sufficient evidence concerning the intention of the administrator in signing the release, and, therefore, the motion of the defendant cannot be granted on this ground.

There are sufficient facts, however, based upon the affidavit of Fred Hasson, an employee of the Ohio Security Insurance Company, to indicate that a third party, the Ohio Security Insurance Company, issued checks to the plaintiffs to pay for the damages caused by decedent Frye. The facts also indicate that these checks were not only received but endorsed by the plaintiffs. Receipt of the checks by the "creditor" from a third party has been determined to be the ratification by the third party of the cancellation of the debt, and the pleading of accord and satisfaction has been held to be an indication of the election by the "debtor" to have the third party insurance company (administrator) pay this debt regardless of agency. *Leavitt* v. *Morrow* (1856), 6 Ohio St. 71. The fact pattern in this old but often cited case indicates that the wife of the decedent at the behest of the executors caused a third party to transfer real estate to a creditor of the estate to satisfy a debt owed by the decedent to the creditor. The creditor claimed the right to proceed against the representatives of the estate for the debt. The court held that payment by a third party where the estate alleges

accord and satisfaction is sufficient to be considered payment from the estate itself, overruling the requirement of privity of contract for accord and satisfaction. Further, the court indicated in its holding that receipt of payment from a third party by the creditor is the ratification of accord and satisfaction by the creditor himself, citing at page 79 the following prior English case law from *Hawkshaw* v. *Rolling,* 1 Strange 24: " '* * * although payment by a stranger be not a legal discharge, yet acceptance in satisfaction is.' " The court further held that, "* * * where the creditor has actually received and accepted the contribution in satisfaction of the debt, to allow him to maintain an action on the same debt afterward would seem to shock the ordinary sense of justice of every man." *Id.* at 77.

Thus the Supreme Court held, irrespective of agency and regardless of contract or interpretation of contract, that the creditor's receipt of payment from parties other than the decedent is considered an accord and satisfaction from the estate. Based upon this holding as well as all of the above, the court finds that defendant's motion for summary judgment is well-taken and hereby grants same.

*Judgment accordingly.*