OPINION
This appeal arises out of an action in the Columbiana County Court of Common Pleas in which Amanda Rice ("Appellee"), the administratrix of the estate of her late husband James M. Rice ("the decedent"), attempted to recover assets of the estate. Appellee alleged that the decedent had fraudulently transferred two parcels of real estate in Wellsville, Ohio, to his brother Roland F. Rice ("Appellant").[1] The properties are located at 1825 and 1829 Clark Avenue, Wellsville. Appellee urged the court to set aside the deeds, transfer the property to the probate estate and order a judicial sale. The trial court erred in finding that Appellee could assert that fraud occurred in the purchase of 1829 Clark Avenue. The trial court also erred in setting aside the deed of 1825 Clark Avenue rather than establishing a constructive trust. The judgment is hereby reversed and judgment entered with respect to one property and remanded for further proceedings as to the other parcel.
The following facts are relevant to this case. In 1982 the decedent and his former wife, Mary Margaret Rice, considered purchasing property at 1829 Clark Ave., Wellsville, Ohio. (Tr., 6). The property was owned by Mary A. Ference. (Tr., Defense Exh. A). The decedent intended to use part of the property as an automobile repair shop and to use part of the building as a residence. (Tr., 54).
On June 29, 1982, Ms. Ference signed a purchase agreement to sell 1829 Clark Ave. to decedent and Appellant jointly as buyers. (Tr., Plaintiff's Exh. 1). The price was listed as $18,500, and was referred to as a cash sale. (Tr., Plaintiff's Exh. 1). On July 2, 1982, the deed transferring the property was recorded. The deed named only "Roland Rice" as the grantee. It is not clear from the deed whether "Roland Rice" meant the decedent's father, Roland S. Rice, or the decedent's brother, Appellant Roland F. Rice.
There is no record that Appellant or the decedent ever took out a mortgage to pay for title to 1829 Clark Ave.
At approximately the same time that 1829 Clark Ave. was being transferred to Roland Rice, the decedent received unsecured loans of $12,000 and $5,000 from his brother Richard Rice. (Tr., 12-13). The decedent eventually repaid the $12,000 loan. The $5,000 loan was forgiven during the probate of the decedent's estate. (Tr., 13).
The decedent and Mary Margaret Rice were divorced in October 1983. (Tr., 7). Mary Margaret Rice specifically waived any claims to the 1829 Clark Ave. property as part of her divorce settlement. (6/5/01 J.E. 2; 5/3/01 Appellee's Trial Brief, 2).
Appellee began her relationship with the decedent in 1991. (Tr., 26). The decedent was living at 1829 Clark Ave. at the time. (Tr., 20). They married on October 24, 1992. (Tr., 19).
The decedent offered to purchase 1825 Clark Ave. from Ronald and Marianne Wolf in late 1991. (Tr., 27). The decedent was not able to get large bank loans on his own. (Tr., 28). Nevertheless, the decedent made a $5,000 down payment on the property with money he had recently received from selling a 1939 Chevy automobile to Appellant. (Tr., 80). Appellant took out a mortgage for $8,700 on the remaining balance of the purchase price. (Tr., Plaintiff's Exh. 20). On January 7, 1992, the property was transferred by deed jointly from Mr. and Mrs. Wolf to Roland F. Rice and Marjorie A. Rice. (Tr., Plaintiff's Exh. 19).
The decedent and Appellee paid all the monthly mortgage payments on 1825 Clark Ave., except for the final payoff amount of $1,095. (Tr., 32).
The decedent rented 1825 Clark Ave. to Mr. Jeff Dawson and his family from 1992 to 1998. (Tr., 30). The decedent collected the rent payments and used the rent to pay the mortgage and to make improvements on the property. (Tr., 30).
The decedent and Appellee lived at 1829 Clark Ave. from 1994-1995. (Tr., 20). They made improvements to the property, including putting in siding, a porch, a back deck, a new kitchen, new floors, and a new roof. (Tr., 20). The decedent decided in August 1997 to rent out the property to Victoria Palmer, who was Appellee's daughter from a previous marriage. (Tr., 21). Ms. Palmer paid rent of $400 per month to the decedent. (Tr., 22). Appellant never received any rent payments from Victoria Palmer. (Tr., 71). In 1994 Appellee paid past due real estate taxes on the 1829 Clark property in the amount of $1,161. (Tr., 35).
Appellee was told by the decedent and other family members that both properties were titled in Appellant's name to help the decedent avoid responsibility for child support payments. (Tr., 37).
The decedent owed Mary Margaret Rice about $15,000 in back child support payments at the time of his death. (Tr., 4).
Before the decedent died he attempted to have both properties put in his name. (Tr., 32).
On April 25, 2000, Appellee filed a complaint in the Columbiana County Court of Common Pleas to recover assets of the estate. The complaint alleged that the decedent had used his own assets to acquire both Wellsville properties, but had arranged to have them titled in the name of Appellant, his brother, to avoid paying creditors. At trial, Appellee specified that the only creditor the decedent had attempted to defraud was Mary Margaret Rice, his ex-wife. (Tr., 51). Appellee requested that the fraudulent conveyances be set aside and asked that the property be sold to pay debts of the estate, namely, the overdue child support payments owed to Mary Margaret Rice.
The court held a bench trial on April 30, 2001. The witnesses were Appellee Amanda Rice, Appellant Roland F. Rice, Mary Margaret Rice, and the decedent's brother, Richard Rice.
On June 5, 2001, the trial court, relying on the evidence at trial and on the parties' trial briefs, rendered its verdict. The court found numerous indications of fraud and found that the decedent had treated the properties as his own until he died. The court held that Appellee had standing to reclaim estate assets on behalf of creditors of the estate. The court found that, "Mary Margaret [Rice] disclaimed any interest in the [1829 Clark Ave.] property as part of the divorce settlement." (6/5/01 J.E. 2). The court held that the Statute of Frauds did not bar Appellee's attempt to reclaim either property because: 1) there were some written documents showing the decedent's intent to acquire an interest in the properties, and 2) the Statute of Frauds does not apply in a case of fraudulent conveyance if sufficient "badges of fraud" are proven. (6/5/01 J.E. 3-4). The court ultimately concluded that:
"the real estate at 1829 Clark Avenue and 1825 Clark Avenue, Wellsville, Ohio are the property of James M. Rice and are therefore assets of the estate of James M. Rice, deceased. The conveyances and deeds indicating that the property is in the name of Roland F. or Roland S. Rice are set aside." (6/5/01 J.E. 6).
Appellant filed this timely appeal on July 3, 2001.
Appellant advances two assignments of error in this appeal, both of which raise the issue of the Statute of Frauds. As the assignments of error have a common basis in law and fact, they will be treated together:
 "THE TRIAL COURT ERRED IN FINDING THAT THE STATUTE OF FRAUDS DID NOT APPLY IN ACCORDANCE WITH OHIO REVISED CODE SECTION 1335.04."
 "THE TRIAL COURT ERRED IN IGNORING DEFENDANT'S TESTIMONY AND ACCEPTING PLAINTIFF'S TESTIMONY THAT WAS NOT CLEAR AND CONVINCING."
Appellant argues that, "[t]he Statute of Frauds prohibits the enforcement of a contract to purchase real estate unless the contract is reduced to writing." Mitcham v. Kinschner (1996), 113 Ohio App.3d 514,516, 681 N.E.2d 482. The pertinent section of the Statute of Frauds is contained in R.C. § 1335.04:
"No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."
Appellant also asserts that there must be clear and convincing evidence to overcome the Statute of Frauds.
Appellant maintains that there is overwhelming proof that he was the true owner of both properties and that the decedent was only leasing the property. Appellant points to the following facts as proof of his ownership: his name was on real estate documents; he paid most of the real estate taxes; the mortgage on 1825 Clark Ave. was in his name; he paid off the final payment of the mortgage; and he paid insurance on 1825 Clark Ave. Appellant explained most of the decedent's contributions to the property as rental payments or contributions in lieu of rent. Appellant concludes that Appellee did not provide clear and convincing evidence to overcome the fact that the properties are titled in Appellant's name.
Appellee concedes that the Statute of Frauds is relevant to this case. Appellee asserts that the Statute of Frauds may not be used in the furtherance of fraud, citing Marion Production Credit Ass'n v. Cochran
(1988), 40 Ohio St.3d 265, 273, 533 N.E.2d 325. Appellee contends that the Statute of Frauds may be overcome where there are significant "badges of fraud" which create an inference of a person's intent to defraud creditors. Appellee argues that these badges of fraud include: reservation of the benefits of the property; continued control over the property; the threat or pendency of litigation; and transfer of the property to a close family member.
Appellee asserts that numerous badges of fraud found are present in this case, including: 1) Appellant's lack of knowledge of any of the real estate transactions; 2) the timing of monetary transfers between the decedent and his brothers; 3) the fact that the decedent's name was on numerous documents related to the properties; 4) the decedent's control over and continued use of the properties; 5) the decedent's divorce from Mary Margaret Rice soon after the purchase of 1829 Clark Ave.; and 6) the fact that the decedent received the rents from the properties, paid the mortgage on 1825 Clark Ave., and paid the real estate taxes. Appellee concludes that there was clear and convincing evidence that a fraud had been perpetrated on Mary Margaret Rice, a creditor of the decedent.
Although Appellant's argument is not presented very well, he is ultimately correct that there was no fraud with respect to the ownership and title to 1829 Clark Avenue.
As a preliminary matter, the actual issues on review must be clarified. Although both parties and the trial court itself discussed this case only in terms of the Statute of Frauds, it is clear that the primary issue here is the parol evidence rule. The parol evidence rule states that, "`absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" Galmush v. Cicchini (2000),90 Ohio St.3d 22, 27, 734 N.E.2d 782, quoting 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. The final written contracts at issue are the two deeds to the properties.
The fact that the parties mislabeled their argument as one concerning the Statute of Frauds is understandable. The Ohio Supreme Court itself mistakenly referred to the Statute of Frauds in Cochran, supra, when it was actually analyzing the parol evidence rule. See Galmush, supra, at 29 fn. 2, (in which the Court admits and corrects its mistake); see also the often cited essay, Shanker, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1, 18.
The Ohio Supreme Court has concluded that the references in Cochran to the Statute of Frauds should be treated as references to the parol evidence rule. Galmush, supra, at fn. 2. As Cochran is the sole case relied upon by Appellee, this further indicates to us that the actual issue under review is the parol evidence rule. In keeping with Galmush,
we will give Appellant the benefit of the doubt and will assume his assignments of error also address whether the parol evidence rule bars Appellee from attempting to overcome or disregard the written and recorded deeds at issue.
Appellee created further confusion by framing the complaint in terms of a theory of fraudulent conveyance. This was not the correct legal framework for Appellee to use to achieve her intended relief, which was to gain access to the value of the two properties. Neither property was ever conveyed, fraudulently or otherwise, by the decedent to Appellant. The decedent never had title to the properties, so he never could have conveyed the properties. Although Appellee asked for the trial court to set aside the deeds, the result of setting aside the deeds is that the court is ordering the parties to return the titles to the original owners, i.e., Mary A. Ference and Mr. and Mrs. Wolf, who are not even parties to this action. Obviously, this is not the relief Appellee seeks, but it is the logical outcome once she was granted judgment on her complaint.
During the course of the trial, Appellee changed her legal theory from fraudulent conveyance to a theory of constructive trust, although Appellee never employed that term of art. For example, Appellee's May 3, 2001, trial brief refers to the decedent's "secret trust" and states that, "the interest of the cestui que trust may be reached by his creditors." It is also clear from Appellee's trial brief that she was urging the trial court to establish a constructive trust.
A constructive trust has been defined as:
 "`* * * [A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice. * * *'" Ferguson v. Owens (1984), 9 Ohio St.3d 223, 225, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221.
It appears that the trial court intended to set up a constructive trust (arising from the decedent's fraudulent concealment of assets from creditors) so that the properties could be sold to pay the decedent's debts. Of course, as both earlier and later discussed, the trial court's actual order setting aside the deeds does not achieve this goal.
Thus, we have determined that the legal issues in dispute involve the Statute of Frauds and the parol evidence rule, in the context of establishing a constructive trust based on fraudulent concealment of assets from a creditor of the decedent's estate, i.e., Mary Margaret Rice.
Whether a document comports with the Statue of Frauds is a question of law and is reviewed de novo on appeal. Fontbank, Inc. v. CompuServe,Inc. (2000), 138 Ohio App.3d 801, 812, 742 N.E.2d 674. Likewise, the application of the parol evidence rule is a matter of substantive law to be determined by the court, and is also reviewed de novo. Charles A.Burton, Inc. v. Durkee (1952), 158 Ohio St. 313, 324, 109 N.E.2d 265.
The purpose of the Statute of Frauds, R.C. § 1335.04, is:
 "to ensure that transactions involving realty interests are commemorated with sufficient solemnity. A signed writing provides greater assurance that the parties and public can reliably know when such a transaction occurs. It supports the public policy favoring clarity in determining real estate interests and discourages indefinite or fraudulent claims about such interests." N. Coast Cookies, Inc. v. Sweet Temptations, Inc. (1984), 16 Ohio App.3d 342, 348, 476 N.E.2d 388.
To satisfy the Statute of Frauds, a writing may consist of one document or a series of related and integrated documents. Internatl. Bhd. ofElec. Workers, Local Union No. 8 v. Gromnicki (2000), 139 Ohio App.3d 641,645, 745 N.E.2d 449.
The parol evidence rule has been defined as follows:
 "`The parol evidence rule, as is now universally recognized, is not a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the "integration"), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.'" Galmish, supra, 90 Ohio St.3d at 27, quoting In re Gaines' Estate (1940), 15 Cal.2d 255, 264-265, 100 P.2d 1055, 1060.
A deed is a contract, and is therefore subject to the parol evidence rule. John Deere Indus. Equipment Co. v. Gentile (1983), 9 Ohio App.3d 251,253, 459 N.E.2d 611.
Despite the confusion in Ohio's caselaw between the Statute of Frauds and the parol evidence rule, there is a general consensus that neither rule may be asserted as a defense to a fraudulent act. See, e.g.,McCarthy, Lebit, Crystal Haiman Co., L.P.A. v. First Union Mgt., Inc. (1993), 87 Ohio App.3d 613, 623, 622 N.E.2d 1093 ("the statute of frauds may not be interposed in furtherance of fraud"); Galmish, supra,90 Ohio St.3d at 27 (the parol evidence rule applies except in cases of fraud, mistake, or other invalidating cause). Therefore, if the evidence supports the trial court's finding that fraud occurred in the transfer of either property, Appellant's arguments on appeal must fail.
Looking first at the 1829 Clark Ave. property, the record contains a purchase agreement dated June 22, 1982, signed by the seller, by the decedent and by "Roland Rice," although it is not clear to which Roland Rice the agreement refers. In conformity with the Statute of Frauds as stated in R.C. § 1335.04, the document is signed by the grantor, describes the property and contains the terms of the sales agreement. This document in and of itself is sufficient to overcome Appellant's Statute of Frauds objection.
Appellant's argument relating to the effect of the parol evidence rule on the deed to 1829 Clark Ave. is affected by a particular factual finding that the trial court made. The trial court specifically found, "Mary Margaret [Rice] disclaimed any interest in the [1829 Clark Ave.] property as part of the divorce settlement." (6/5/01 J.E. 2). A reviewing court should accord a high degree of deference to the factual determinations made by the trier of fact, even as they relate to the review of matters of law. Wiltberger v. Davis (1996), 110 Ohio App.3d 46,51-52, 673 N.E.2d 628. This is particularly the case where we can see that the finding is supported by an admission in Appellee's trial brief. (5/3/01 Trial Brief, 2).
Appellee, as administratrix of the decedent's estate, prosecuted this case in a representative capacity. She stood in the shoes not only of the decedent but also of Mary Margaret Rice, a creditor of the estate. Doanv. Biteley (1892), 49 Ohio St. 588, 597, 32 N.E. 600; see also Surber v.Woodruff (1983), 10 Ohio Misc.2d 1, 4, 460 N.E.2d 1164. Appellee, as a mere representative, cannot claim any more rights than the parties she represents. Therefore, if Mary Margaret Rice cannot pursue a claim for fraudulent concealment of assets, then neither can Appellee as the representative of Mary Margaret Rice.
The trial court's finding that Mary Margaret Rice waived her claim to any interest in 1829 Clark Ave. bars Appellee from now asserting a fraud claim relating to that property. The alleged fraudulent transfer occurred while the decedent and Mary Margaret Rice were married. It is clear from the record that the property was paid for in cash at that time. It is clear from the record that Ms. Rice knew of the decedent's intent to purchase the property, knew that he borrowed money to pay for it, and knew that the property was ultimately deeded to Roland Rice rather than to the decedent.
Instead of claiming an interest in the property during the divorce proceedings, Mary Margaret Rice waived any claim to an interest in the property. The record supports the trial court's finding that Mary Margaret Rice waived any interest in the 1829 Clark Ave. property. It is very difficult to comprehend how Mary Margaret Rice could assert, 17 years after waiving her interest in property, that her or her ex-husband's interest in the property was somehow concealed from her at the time of her divorce. Appellee's claim to 1829 Clark Ave. is only as good as Mary Margaret Rice's claim. Therefore, Appellee is barred from asserting a fraud claim that Mary Margaret Rice cannot herself pursue.
Appellee's fraud claim was the basis for overcoming the parol evidence rule with respect to the deed to 1829 Clark Ave. Appellee's fraud claim was also the basis for asking the trial court to overturn the deed and to set up a constructive trust. Because Appellee should have been barred from asserting that 1829 Clark Ave. was fraudulently transferred, the parol evidence rule prevents Appellee from presenting extrinsic evidence to contradict the deed to 1829 Clark Avenue. The trial court was in error in allowing parol evidence to overcome the deed to 1829 Clark Ave. and to attempt to award the property to the decedent's estate. Due to this error, its order with respect to the property located at 1829 Clark Ave. is vacated and judgment as to this property is hereby entered in favor of Appellant.
Turning to the issues surrounding the property located at 1825 Clark Ave., there is nothing in the record comporting with the Statute of Frauds, R.C. § 1335.04, which would indicate that the decedent held title to the property. There is no document in the record signed by the grantor (in this case, Mr. and Mrs. Wolf) indicating their intent to transfer the property to the decedent. As previously stated, though, if evidence of fraud in the real estate transfer exists, neither the Statute of Frauds nor the parol evidence rule enters into the analysis in determining the true owner of the property.
Appellee litigated this case under a theory of common law fraud. Any fraud claim requires proof of fraudulent intent, i.e., an intent to mislead or deceive the injured party. Boone v. Vanliner Ins. Co. (2001),91 Ohio St.3d 209, 216, 744 N.E.2d 154. Fraudulent intent is rarely provable by direct evidence and must be inferred from the surrounding facts and circumstances. Stein v. Brown (1985), 18 Ohio St.3d 305, 308,480 N.E.2d 1121; Leal v. Holtvogt (1998), 123 Ohio App.3d 51, 76,702 N.E.2d 1246.
"In an action for equitable relief based on fraud, such as to set aside or reform a written document, clear and convincing evidence of the fraud is required, * * *." Household Finance Corp. v. Altenberg (1966),5 Ohio St.2d 190, 214 N.E.2d 667, syllabus. "Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of syllabus.
Courts have developed a list of factual circumstances, or "badges of fraud," which support an inference of actual fraud, and these "badges" have been codified in R.C. § 1336.04(B):
"(B) In determining actual intent under division (A)(1) of this section, consideration may be given to all relevant factors, including, but not limited to, the following:
"(1) Whether the transfer or obligation was to an insider;
"(2) Whether the debtor retained possession or control of the property transferred after the transfer;
"(3) Whether the transfer or obligation was disclosed or concealed;
"(4) Whether before the transfer was made or the obligation was incurred the debtor had been sued or threatened with suit;
"(5) Whether the transfer was of substantially all of the assets of the debtor;
"(6) Whether the debtor absconded;
"(7) Whether the debtor removed or concealed assets;
"(8) Whether the value of consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
"(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
"(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;
"(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor."
The trial court found numerous badges of fraud in the transfer of 1825 Clark Ave. to Appellant, all of which are confirmed in the record. The decedent was in arrears in his child support payments at the time the property was transferred to Appellant. The decedent, not Appellant, made a $5,000 down payment on the property and paid all but one of the mortgage payments. The decedent rented the property to a third party for six years and used the rent money to pay the mortgage and to make improvements on the property. The decedent paid real estate taxes on the property. The decedent signed a real estate brokerage contract to sell 1825 Clark Ave., signing as a person authorized to sell the property. The decedent signed, as owner, a Residential Property Disclosure Form for 1825 Clark Ave. The decedent also spent considerable sums of money repairing the property. Thus, clear and convincing evidence exists supporting numerous inferences that the decedent used the real estate transaction as a way to secretly shelter his cash so that it was not accessible to his ex-wife for child support.
Nevertheless, the trial court's findings, although well-supported by the record, do not support the court's ultimate remedy, i.e., the setting aside of the deed in 1825 Clark Avenue. If the trial court intended to set up a constructive trust so that the property could be sold for the benefit of the decedent's estate, the order setting aside the deed was counterproductive. The court merely had to declare a constructive trust. Appellant would have automatically become a constructive trustee of the property. As trustee, he could have authorized any subsequent sale of the property if so ordered by the court. The order setting aside the deed creates a confusing situation and needlessly raises issues concerning the rights of the former owners who are not even parties to this litigation. Therefore, we must also reverse the order setting aside the deed to this property and remand this portion of the case for clarification from the trial court as to the disposition of 1825 Clark Avenue. Although we can glean from the record the trial court's probable intent, we decline to impose our own interpretation on the trial court.
Donofrio, J., concurs.
Vukovich, P.J., concurs.
[1] There are numerous references in the record to defendant Roland F. Rice as well as to defendant Roland R. Rice, both of whom are referred to as the decedent's brother. Although attorneys have made appearances on behalf of both, it appears that these are one and the same person and that his name is Roland F. Rice. There is a separate defendant named Roland S. Rice, who is the decedent's father.