# Supreme Court Decisions.

## WHAT CONSTITUTES THE EXHIBITING OF A CLAIM AGAINST THE ESTATE OF A DECEDENT.

### MILLER V. EWING, ADMINISTRATOR.

Decided, March 31, 1903.—68 Ohio State, p. 176.

*Holder of a Note by Deceased Maker—Presents Note to Administrator— Such Presentation "Exhibits" the Claim, When—Section 6097, Revised Statutes—Later, Administrator Rejects the Claim—Six Month's Limitation Then Begins—Rejection May be by Attorney— Administrator No Power to Waive Limitation of Statute, When.*

1. Where the holder of a note executed by a deceased person, upon inquiry by the administrator if he has a claim, presents the note to such administrator and requires a partial payment upon it, then or shortly, saying also that the administrator need not hurry, such presentation sufficiently "exhibits" the claim as defined in Section 6097, Revised Statutes. It is not necessary to such exhibiting of the claim that the claimant shall formally present it with a demand that the administrator indorse his allowance thereon.

2. If, within a reasonable time after such exhibition of the note, the administrator informs the claimant, unequivocally, that the claim is rejected and that all that he will get on it will be at the end of a lawsuit, the six months' statute of limitations will then begin to run, and if suit be not brought within six months no action can be maintained upon the note.

3. Such rejection may be made by an attorney for the estate thereunto duly authorized, acting ostensibly and in fact for the administrator.

4. If in such case suit be not brought within six months, the administrator has not power afterward by estoppel or otherwise, to waive the statute and thus bind the estate.

Error to the Circuit Court of Wayne County.

The plaintiff in error, Joseph Miller, was plaintiff below, and the defendant in error, Charles L. Ewing, administrator of Samuel Ewing, deceased, was defendant below. Plaintiff's action was founded on a promissory note dated December 5, 1884, due in one year, for $300, with interest at eight per cent. payable annually.

No credits appeared on the note. Suit was commenced August 19, 1899, and the amount demanded was $300, with interest payable annually from date. The petition contained the further averment of a presentation May 12, 1899, of the claim duly verified, to the administrator and a demand for an endorsement of allowance, and that he then refused such endorsement and in writing disallowed and rejected the claim. In his answer defendant admitted that the note was, on May 12, 1899, presented for allowance, which was refused, and then pleaded two defenses, viz.: That on October 8, 1898, the note was presented and his acceptance as a valid claim against the estate demanded, which, on October 11, 1898, was refused and the claim disallowed and rejected, and that more than six months passed after the rejection and disallowance and before the commencement of the action; also that on February 1, 1899, a like presentation and rejection took place, and suit was not commenced within six months after that date. This new matter was denied by the reply, and it was also averred that at the time of the rejection, May 12, 1899, the administrator indorsed in writing his rejection on the note and then made no claim that he had at any prior time rejected it; that the plaintiff relied upon that indorsement, having no knowledge of any prior rejection, and so relying, was induced to bring suit and subject himself to expense in counsel fees and other expenses; wherefore defendant "waived any prior claim of rejection and is estopped from denying that at any prior time he rejected said claim."

The jury returned a general verdict for the defendant; also their answers to special interrogatories as follows:

"1. Was the claim sued on rejected by the administrator, through his attorney, on October 11, 1898? Rejected.

"2. Was the claim sued on rejected by the administrator in person on or about February 1, 1899? No.

"3. Did Miller, either in October or February, present this note to the administrator for allowance or rejection, and did Miller understand and believe that on either occasion his note was rejected? Yes."

Judgment was rendered upon the verdict, which was affirmed by the circuit court.

*McClure & Symser,* for plaintiff in error, cited and commented upon the following authorities:

*Harter et al* v. *Taggart's Exrs.,* 14 Ohio St., 122; *Keenan* v. *Saxton's Admrs.,* 13 Ohio, 42; 5 Am. & Eng. Ency. Law., 219;

2 Woerner's Am. Law Adm., 805; Sec. 6097, Revised Statutes; *Hardy* v. *Ames*, 47 Barb., 413; *Selover* v. *Cole*, 63 N. Y., 438; 8 Am. & Eng. Ency. Law., 1095; *Van Saun* v. *Farley*, 4 Daily (N. Y.), 165; *Pittsburg, C. & St. L. Ry. Co.* v. *Krouse*, 30 Ohio St., 222; *Insurance Co.* v. *Insurance Co.*, 5 Ohio St., 450; *Baldwin* v. *Bank*, 1 Ohio St., 141; *Street Ry. Co.* v. *Stallman*, 22 Ohio St., 1; *Jones* v. *Bangs*, 40 Ohio St., 139; *Bain* v. *Wilson*, 10 Ohio St., 14; *Walker* v. *Stetson*, 14 Ohio St., 9; *Insurance Co.* v. *Purcell*, 10 Circ. Dec., 528; 19 C. C. R., 135; *Stambaugh* v. *Smith*, 23 Ohio St., 594; *Calanan* v. *McClure*, 47 Barb., 206; *National Bank* v. *Speight*, 47 N. Y., 668; *Hoyt* v. *Bonnett*, 50 N. Y., 542; *Kidd* v. *Chapman*, 2 Barb. Ch., 414; *Reynolds* v. *Collins*, 3 Hill, 36; *Elliot* v. *Cronk's Admr.*. 13 Wend., 35; *Barsalou* v. *Wright*, 4 Bradf., 164.

*T. B. Keeler* and *Frank Taggart*, for defendant in error, cited and commented upon the following authorities:

*Kyle* v. *Kyle*, 15 Ohio St., 20; *Harter* v. *Taggart's Exrs.*, 14 Ohio St., 122; *Thomas* v. *Chamberlain*, 39 Ohio St., 112; *Selover* v. *Coe*, 63 N. Y., 438; *Wintermeyer* v. *Sherwood*, 77 Hun., 193; 1 Perry on Trusts, Sec. 409; *Railroad Co.* v. *Schultz*, 43 Ohio St., 270; *Railway Co.* v. *Ford*, 9 Circ. Dec., 786; 18 C. C. R., 239; *Railway Co.* v. *Krouse*, 30 Ohio St., 224; Sec. 6097, Revised Statutes; 2 Woerner's Law Adm., Sec. 402; *Pollock* v. *Pollock*, 1 Circ. Dec., 408; 2 C. C. R., 140; *Dunlap* v. *Robinson*, 12 Ohio St., 530; *Westfall* v. *Dungan*, 14 Ohio St., 276.

SPEAR, J.; BURKET, C. J., PRICE and CREW, JJ., concur.

In form the exceptions of plaintiff are to the charge of the court to the jury, the refusals to charge, and the overruling of the motion for a new trial, but in substance the objections relate to the alleged error arising from a wrong conception of the statute applicable to the case, which error resulted in a judgment for defendant when judgment should, under the facts established, have been given for the plaintiff.

Upon the issue made by the answer and reply that the claim was presented October 8, 1898, and rejected October 11, 1898, the jury found, in addition to the general verdict for defendant, a special finding in his favor, so that the inquiry calls for an examination of the testimony bearing upon that issue. If there be found any testimony which, within a proper construction of the statute, tends

to sustain the special verdict, then the issue is settled in favor of the defendant, while if no such evidence is found, the whole defense fails, for the second special finding of the jury disposes adversely of defendant's claim that there was a presentation and rejection February 1, 1899.

From the testimony of Charles L. Ewing, the administrator, and Thomas B. Keeler, attorney, it appears that on Saturday, October 8, 1898, Ewing, at the request of Miller, went to Miller's hotel to settle a book account which Miller had against his father's estate; that the account was then and there settled, he paying Miller $125 in money and taking a receipt; that he asked Miller if he had any other claim, to which Miller replied, "Yes, that he had a little note against the estate." He then went down stairs and came up with the note (the note in suit), and handed it to Ewing, saying, "I am in no hurry about all of it, just pay a little in a few days;" * * * part of it will do (he said), fifty or seventy-five dollars is all I care for now." Ewing handed the note back, saying nothing. Before Ewing left, Miller said, "Charlie, you needn't be in a hurry about this, just pay me a little on it; I just need a little in a few weeks." The next Monday, October 10th, Ewing called upon Thomas B. Keeler, attorney for the estate, and gave him instructions directing him to go to Burbank (Miller's residence) respecting this note.

Keeler, the attorney, testified in substance that he was, on and before October 10, 1898, attorney for the Ewing estate; that on that day the administrator came to his office in relation to the Miller note, giving him instructions in respect to it; that the next day respecting those instructions, he went to see Miller at Burbank in behalf of the administrator. He met Miller at his hotel and said to him that he understood he held a note against the estate of Ewing, and asked to see it. Miller got the note. Keeler looked at it, saying: "It is Samuel Ewing's signature, but it seems strange that you should have a note against Ewing for fourteen years drawing eight per cent. interest, and never presented the note during his lifetime." Miller made no reply to that. Keeler said to Miller the heirs came to the conclusion there was something wrong about the note, and said: "You will have to sue this note to get anything on it. I came over for the purpose of rejecting the note." Miller said: "I will make an affidavit that the note is all right." Keeler said: "That will not do; the heirs think there is something wrong about the note, their father loaning money at six per cent.

and to hold a note against him for eight; something wrong about it." Miller took the note and went up stairs. On cross-examination the witness said: "I told him that the administrator and heirs employed me to come over and reject that claim, and I did so tell him that the claim was rejected, and that all that he would get on that note would be at the end of a lawsuit. I think probably those are my very words."

By cross-examination, and by contradictions by Miller on the stand, and otherwise, the plaintiff sought to break the force of this testimony. That situation presented a question respecting the preponderance of the evidence, and was for the jury and the courts below, but does not enter into the consideration of this court. A review of the conflicting evidence is, therefore, unnecessary.

Our statute applicable to the case is Section 6097, Revised Statutes. It provides: "If the claim against the estate of any deceased person be exhibited to the executor or administrator, before the estate is represented insolvent, and be disputed or rejected by him, and the same shall not have been referred, the claimant shall, within six months after such dispute or rejection, if the debt, or any part thereof, be then due, or within six months after some part shall have become due, commence a suit for the recovery thereof, or be forever barred from maintaining any action thereon."

The contention on the part of the plaintiff in error is that, giving to the statute its proper construction, there is no evidence tending to support the jury's finding, because it does not appear that the creditor exhibited his claim for the purpose of having it allowed, nor that there was any attempt to reject it by the administrator himself; that the power to allow or reject a claim can not be delegated, and hence such power could not be exercised by an attorney. In support of this proposition it is further urged that the statute is highly penal and must be strictly construed; hence there must be an absolute and full compliance with the letter of the statute in order to start the running of the six months' limitation. A strict construction has been given to like statutes by some courts, notably the Court of Appeals of New York. The trend of our courts, however, has been to apply it to the usual rule or a reasonable construction. Its manifest purpose is to aid in the early settlement of estates. The limitation relates only to the commencement of the suit, and affords abundant time for the vigilant creditor to determine whether or not he will invoke the action of

the law. This limit is two months longer than is given to parties desiring to prosecute error from adverse rulings of courts, and is not an unreasonable limitation. Other persons are interested in the settlement and distribution of estates, and they should not be unreasonably delayed in the enjoyment of their rights by the dullness or indecision of one creditor. It is insisted that in order to answer the requirement of an exhibition of the claim to the administrator, it must be shown that the creditor presented it for the distinct purpose of an allowance. If this be so, then it is not within the power of the administrator to reject until after the creditor has made such presentation. That is, the creditor may wait until the last day of the eighteen months after appointment, and then present his claim and have six months longer within which to begin his suit, and no vigilance by the administrator will avail to prevent such delay. The proposition is wholly untenable. There should be no technical construction given to the matter of exhibiting the claim. If the facts show that the parties understand that the claim is presented then it is "exhibited." *Ganesvoort* v. *Nelson,* 6 Hill, 389. And where a creditor produces his claim in a shape to sufficiently apprise the administrator of the nature and asks pay upon it, in whole or in part, immediately or in a short time, surely it must follow that he has presented it for allowance. An administrator may allow without paying, but, in the nature of things, he can not pay without allowing. So that, even if the proposition that there is not an exhibition of the claim unless it is presented for the distinct purpose of allowance be sound, yet it does not apply to this case. For the claimant distinctly asked pay upon his note. Nor is there force in the assumption that the presentation and rejection must be contemporaneous acts. The obvious spirit of the statute is that the administrator shall have ample time to consider. Hence there can be no objection to a rejection because not made at the time of the presentation.

Another contention is that the effect of the last clause of Section 6097, viz.: "A claim shall be disputed or rejected if an executor or administrator shall, on presentation of vouchers thereof, refuse, on demand made for the purpose, to indorse thereon his allowance of the same as a valid claim against the estate," is to define the meaning of the words "disputed or rejected," as used earlier in the section. This proposition is effectually disposed of by *Harter* v. *Taggart,* 14 Ohio St., 122, where it is held that the clause "is not restrictive but in aid of the first, and creates a constructive

refusal, for the benefit of the creditor, when the executor, upon such presentation, waives or evades definite action thereon."

Without questioning the proposition that the execution of the trust reposed in the administrator to allow and reject claims can not be delegated, it is manifest by this evidence that the attorney, in his interview with Miller, was speaking for the administrator, and it is not the law that a trustee can not act through an agent. Where he gives to the attorney · instruction how to act, it is not a delegation of the trust, but a performance of it by the trustee acting through another. *Selover* v. *Coe,* 63 N. Y., 438; 1 Perry on Trusts, Sec. 409; *Wintermeyer* v. *Sherwood,* 77 Hun., 193.

We think it clear that, within the meaning of the statute, giving it a reasonable construction and one in accordance with previous decisions of this court, there was evidence tending to support the finding of the jury, and with that conclusion reached our inquiry as to that branch of the case necessarily ends. See *Harter* v. *Taggart, supra; Cheeseman, Admr.,* v. *Kyle,* 15 Ohio St., 15.

It is insisted that the conduct of the administrator subsequent to October, 1898, estops him from now pleading the limitation of the statute. Several answers to this claim are apparent. Estoppel is not sufficiently pleaded in the answer. But if it were, the finding of the jury effectually disposes of the claim. The contention rests mainly upon the neglect of the administrator to inform the attorney who presented the claim and asked an indorsement May 12, 1899, that it had been previously rejected. He was not required to inform the attorney. As found by the verdict of the jury, Miller, the client, knew as well as the administrator knew it, that the note had been rejected the previous October; indeed, he knew it better because he was personally present and the administrator was not. The third question put to the jury was: "Did Miller, either in October or February, present this note to the administrator for allowance or rejection, and did Miller understand and believe that on either occasion his note was rejected?" To which the answer was "Yes." Having already found that there was no such presentation in February, the effect of this third finding is to answer that Miller did understand and believe that the note was rejected in October. So that, if Miller understood that his claim had been rejected in October, 1898, no beneficial result could follow a declaration to that effect by Ewing in May, 1899. Besides, the six months after that rejection had expired, and it seems reasonable to conclude, as is held in *Brown* v. *Anderson,*

13 Mass., 201, that where an administrator makes a new promise to pay, after the bar is complete, he does not bind the estate, and what he could not legally do directly and intentionally he could not do indirectly and by mere negligence. Whether or not he might bind himself personally we need not inquire. See, also, *Pollock* v. *Pollock*, 1 Circ. Dec., 408; 2 C. C. R., 140. We readily assent to the proposition that in order to avail in starting the six months' clause to running, the rejection must be plain and unequivocal. If it is simply argumentative and uncertain; or, as in *Bank* v. *Speight*, 47 N. Y., 668, there had been, concurrent with the alleged rejection, an agreement to refer; or if, as held in *Hoyt* v. *Bonnett*, 50 N. Y., 538, at the time of the alleged rejection, the administrator does or says anything from which the claimant may *reasonably* infer that the determination to dispute or reject the claim is not final, but that it will be further examined or considered, the administrator may not set up such a dispute as a rejection. This is the rule of a number of cases cited by counsel for plaintiff in error. They have no application to this case, because the facts are wholly dissimilar. It is to be borne in mind that the substantial dispute in those cases related not to the question whether or not the six months' bar had been or could be waived, but whether or not there had been, in fact and in law, a rejection of the claim.

Complaint is made that the trial court refused to give special charges asked which were proper, and that there is error in the charge as given. We have examined the record fully in these respects, and are of opinion that the court committed no error to the prejudice of the plaintiff in its refusals or modifications, and that the charge as given is in some respects even more favorable to the plaintiff than he could rightfully ask.

*Judgment affirmed.*