BECKLER, Appellant,

v.

BACON, Admr., Appellee.

[Cite as *Beckler v. Bacon*, 170 Ohio App.3d 612, 2007-Ohio-1319.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060228.

Decided March 23, 2007.

Terrence M. Garrigan, for plaintiff–appellant.

Mark A. Wilder and Michael J. Bergmann, for defendant–appellee.

WINKLER, Judge.

{¶ 1} Plaintiff-appellant, Joseph Beckler, and his family moved next door to George Knuckles in 1990. Beginning in 1995, Beckler helped the elderly Knuckles with various tasks around his house, including yard work and home repairs. In April 2002, Knuckles was hospitalized. He was discharged after a short stay. Knuckles did not want to go into a nursing home; he preferred to stay in his home. From May 2002 through September 2002, Beckler spent nights at Knuckles's home and took care of all his personal needs. Beckler bathed and shaved Knuckles, brushed his teeth, cut his hair and nails, assisted him in the bathroom, emptied his bedpan, washed Knuckles's dishes and laundry, made his bed, prepared and served his meals, gave Knuckles his medicine, took him to the

doctor, watered his plants, and took out his garbage. Beckler also did Knuckles's banking and grocery shopping and continued to do Knuckles's home repairs and yard work.

{¶ 2} In September 2002, Beckler told Knuckles that he could no longer continue to care for him because of the time that Knuckles's care was taking away from Beckler's family and work. Beckler stated that Knuckles had offered him "everything he owned" if Beckler would continue to care for him. Beckler stated that Knuckles had shown him a bank statement for an account with a balance of approximately $120,000 and had promised Beckler that the arrangements for his payment would be made "through paperwork." According to Beckler, Knuckles did not specifically state that the "arrangements for payment" would be made in his will. Beckler agreed to continue to care for Knuckles and did so until Knuckles's death on January 16, 2004. At the request of one of Knuckles's relatives, Beckler mowed the lawn at Knuckles's home until August 2004.

{¶ 3} Knuckles's sister, Myrtle Hampton, was appointed administrator of his estate. Beckler submitted a claim against Knuckles's estate on January 17, 2005. The administrator rejected the claim. On April 14, 2005, Beckler filed a complaint in the common pleas court for payment of the claim. Beckler subsequently filed an amended complaint, alleging that the reasonable value of his services for Knuckles's "personal care" was $84,000, and that the reasonable value of his services for maintaining Knuckles's home was $24,550. The administrator filed a counterclaim, which is not the subject of this appeal. Myrtle Hampton died and her son, George "Skip" Bacon, was substituted as administrator of Knuckles's estate. The administrator filed a motion for summary judgment on the basis that Beckler's complaint had not been timely filed pursuant to R.C. 2117.12. The administrator's motion also essentially alleged that Beckler had not set forth any sustainable claim against the estate. The trial court granted the motion for summary judgment, but did not give any reasons for its ruling. Beckler has appealed.

{¶ 4} Beckler's sole assignment of error alleges that the trial court erred in granting the administrator's motion for summary judgment.

{¶ 5} Summary judgment is proper pursuant to Civ.R. 56(C) when (1) no genuine issue of material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence viewed most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.[1]

---

1. See *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 6} The party seeking summary judgment has the burden to show that no genuine issue of fact exists for trial.[2]  Doubts must be resolved in favor of the nonmoving party.[3]  Appellate review of the trial court's decision to grant summary judgment is de novo.[4]

{¶ 7} Beckler first argues that there are genuine issues of material fact as to whether he timely filed his complaint under R.C. 2117.12.  R.C. 2117.12 requires an action on a rejected claim to be filed within two months after the rejection.  The purpose of requiring suit on rejected claims to be filed within two months of the rejection is to "facilitate the administration of estates and to permit them to be settled and disposed of without delay."[5]

{¶ 8} George Bacon stated in an affidavit that he had hand-delivered a copy of Myrtle Hampton's rejection letter to the Beckler residence and had stuck it in the front door on February 11, 2005.  Bacon further stated that he had hand-delivered a second copy to the Beckler home on February 12, 2005, again sticking the letter in the front door.  Beckler's complaint was filed on April 14, 2005.  If Beckler had received the rejection letter on February 11 or February 12, 2005, his complaint would have been filed outside the two-month period following the rejection, and it would have been time-barred.

{¶ 9} Beckler's wife, Pam, testified in her deposition, and the exhibits show, that she had signed for certified mail delivery of a copy of the rejection letter on February 15, 2005.  Pam Beckler also testified that she had found a hand-delivered copy of the rejection letter in her door on President's Day of 2005.  She specifically remembered that the letter had been hand-delivered on President's Day, because her daughter had been off from school.  Pam Beckler was very clear in her testimony that she had found the hand-delivered copy of the rejection letter in her front door on President's Day.  When she was asked by the administrator's counsel whether the rejection letter had been received on February 11, she stated that it had not.  She further stated that the envelope containing the letter had had the words "hand delivered" and the date written on it.  She testified that no other copy of the letter had been left in her door.  Toward the end of her deposition, the administrator's counsel, questioning Pam Beckler about the certified letter from Myrtle Hampton, asked, "And was that

---

2.  See *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798.

3.  See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

4.  See *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 738 N.E.2d 1243; *Jorg v. Cincinnati Black United Front*, 153 Ohio App.3d 258, 2003-Ohio-3668, 792 N.E.2d 781.

5.  See *Fifth Third Bank v. Elliott* (Apr. 10, 1989), 2nd Dist. No. 88–CA–61, 1989 WL 35891, citing *Miller v. Ewing* (1903), 68 Ohio St. 176, 67 N.E. 292.

letter received, that certified mail letter received, after this had been stuck in the door?" Pam Beckler answered, "Yes." Beckler testified in his deposition that he did not remember when he had received the rejection letter.

{¶ 10} Pam Beckler subsequently filed an affidavit in which she stated that President's Day in 2005 had fallen on Monday, February 21. Attached to the affidavit was a copy of the envelope in which the hand-delivered rejection letter had arrived. The front of the envelope read "Hand Delivered 2/21/05." Pam Beckler also stated in her affidavit that she had mistakenly said in her deposition that she had received the hand-delivered letter before she had received the certified letter.

{¶ 11} Construing the evidence most strongly in favor of Beckler, we hold that genuine issues of material fact remain as to the date of delivery and receipt of the hand-delivered rejection letter. Bacon stated in his affidavit that he had hand-delivered copies of the rejection letter to Beckler's home on February 11 and February 12, 2005. It is undisputed that a certified-mail copy of the rejection letter was delivered to Beckler's home on February 15, 2005. A complete reading of Pam Beckler's deposition reveals that she was very clear in her testimony that she had received the hand-delivered copy of the rejection letter on February 21, 2005. If Beckler received a certified-mail copy of the rejection letter on February 15, 2005, and a hand-delivered copy of the rejection letter on February 21, 2005, then his April 14, 2005, complaint was timely filed. Therefore, the trial court erred in granting summary judgment in favor of the administrator on the ground that Beckler's complaint was time-barred, because genuine issues of material fact remain as to the date of delivery and receipt of the hand-delivered rejection letter.

{¶ 12} Further, because Beckler adequately pleaded and supported a claim for quantum meruit, we hold that the trial court erred in granting the administrator's motion for summary judgment on the ground that Beckler had not set forth a viable claim against the estate.

{¶ 13} In *Brose v. Bartlemay*,[6] we stated, "Quantum meruit is an equitable doctrine resting on the principle that an individual should not be permitted to unjustly enrich himself or herself at another's expense without making compensation or restitution for the benefits received." "Quantum meruit is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered."[7]

---

6. *Brose v. Bartlemay* (Apr. 16, 1997), 1st Dist. No. C–960423, 1997 WL 180287.

7. See *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920.

Quantum meruit implies a promise to pay the reasonable value of services rendered or materials supplied by one person for another when the services or materials are knowingly and voluntarily accepted by the recipient.[8] The law presumes that the services or materials were given and received in the expectation of payment and implies a promise to pay what they are worth.[9]

{¶ 14} A plaintiff may recover in quantum meruit for the value of services rendered for the benefit of a decedent during his lifetime.[10] If the services are rendered under circumstances implying that they are not gratuitous, there is no fixed amount to be paid, and the recipient orally indicates that he will leave a legacy in his will in order to compensate the provider but fails to do so, the provider may recover for payment for the services in an action in quantum meruit.[11] The question of whether the services were provided gratuitously is a question of fact. In the absence of a family relationship between the decedent and the provider of the services, the presumption is that the person who performed the services is to be paid.[12]

{¶ 15} Beckler's complaint sets forth a demand for equitable relief and an amount for the value of his services. The claim is supported by his deposition and that of his wife. We hold that there exist genuine issues of material fact as to whether Beckler is entitled to recover in quantum meruit.

---

8. See *Motzer v. Estate of Carpenter* (May 18, 1990), 2nd Dist. No. 11869, 1990 WL 68960.

9. See id.

10. See id; *Jankowski v. Key Trust Co.* (June 8, 2001), 6th Dist. No. L–00–1310, 2001 WL 640919; *Barto v. Barto* (Feb. 7, 1992), 11th Dist. No. 91–T–4520, 1992 WL 40227; *Thompson v. Thompson* (Mar. 2, 1990), 5th Dist. No. 25–CA–89, 1990 WL 21423; *Wood v. Tilden* (Oct. 30, 1986), 5th Dist No. 86–CA–12, 1986 WL 12659; *Singer v. Reese* (Nov. 30, 1985), 2nd Dist. No. 2022; *Anderson v. Fulker* (July 16, 1985), 2nd Dist. Nos. 84CA61 and 84CA62, 1985 WL 8744; *Hancock v. Williams* (Aug. 15, 1979), 1st Dist. Nos. 263 and 272; *Bemis v. Bemis* (1948), 83 Ohio App. 95, 38 O.O. 197, 82 N.E.2d 757; *Struble v. Struble* (1932), 42 Ohio App. 353, 182 N.E. 48.

11. See id.

12. See *Motzer v. Estate of Carpenter*, supra; *Estate of Combs* (Mar. 13, 1998), 1st Dist. No. C–961056, 1998 WL 107664; *In re Guardianship of Hall* (Mar. 26, 1996), 4th Dist. No. 95CA16, 1996 WL 142577; *Spinks v. Carey* (Feb. 10, 1992), 12th Dist. No. CA91–02–003, 1992 WL 24789; *In re Estate of Fleming* (June 25, 1984), 12th Dist. No. CA83–08–009; *Outland v. Huffman* (Aug. 13, 1982), 2nd Dist. No. 82CA10; *Williams v. Fullum* (Sept. 25, 1974), 9th Dist. No. 7475; *Evans v. McInturff* (1960), 111 Ohio App. 445, 15 O.O.2d 62, 173 N.E.2d 162.

{¶ 16} The assignment of error is sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with law and this decision.

Judgment reversed
and cause remanded.

SUNDERMANN, P.J., and CUNNINGHAM, J., concur.

RALPH WINKLER, retired, of the First Appellate District, sitting by assignment.