OPINION
{¶ 1} Plaintiff-appellant, Randy A. Turturice, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendant-appellee, AEP Energy Services, Inc. ("AEPES"), in appellant's action for unpaid bonuses earned during his employment with AEPES. *Page 2 
 {¶ 2} AEPES is a wholly-owned subsidiary of American Electric Power Co., Inc. ("AEP"), a large electric utility. AEP created AEPES in 1997 for the purpose of trading in the natural gas wholesale market and related activities.
 {¶ 3} Appellant began employment with AEP in 1997 in another position, and in 1998 transferred to a position as a trader for AEPES, working in this capacity until he was fired in October 2002. For the last 18 months of his employment, appellant worked for the AEPES "trading desk" at the New York Mercantile Exchange ("NYMEX") as a fixed-price natural gas trader. This was one of four regional desks operated by AEPES.
 {¶ 4} Appellant, like most AEPES traders, was paid a comparatively low annual fixed salary, and realized the bulk of his income from a bonus system based upon trading book profits. The terms under which these bonuses were paid to some of AEPES's traders present one of the questions of fact in this matter, but it is undisputed that multi-million dollar annual bonuses were common in the energy trading industry generally and for AEPES's traders, supervisors, and executives.
 {¶ 5} AEPES fired appellant in October 2002 along with three other gas traders and a supervisor, accusing these employees of manipulating various published trading indices. The traders were accused of submitting false trade data for the purpose of increasing the profitability of their own transactions on behalf of AEPES. AEPES did not pay appellant a bonus for the portion of 2002 that he worked, despite the fact that appellant had realized substantial trading profits during that period.
 {¶ 6} Appellant's complaint alleged that prior-year bonuses for himself and others ranged from seven to 15 percent of trading profits. The complaint further asserts that *Page 3 
appellant earned $16.5 million in profits on his trading book for AEPES in the portion of 2002 that he worked, and sought a corresponding bonus on theories of breach of contract, quantum meruit, and unjust enrichment.
 {¶ 7} The trial court overruled motions for summary judgment by AEPES, and the matter went to trial under disputed conditions: AEPES asserts that the jury was impaneled to render a binding verdict on the contract claim, but only in an advisory capacity on the equitable claims for quantum meruit and unjust enrichment. Appellant asserts that all theories of the case were tried to the jury for a binding verdict. In the event the jury found against appellant on his contract claim, concluding that no express contract for employment or payment of a bonus existed. The jury found in favor of appellant on his unjust enrichment claim, awarding damages of seven percent of the profits from appellant's trading book for 2002, or $1,159,016. In subsequent proceedings, the trial court declined to accept the jury's verdict and found that appellant was not entitled to any bonus for his last year of employment. AEPES characterizes this action by the trial court as a refusal to accept an advisory jury's verdict, and appellant, to the contrary, characterizes it as the trial court in essence granting judgment notwithstanding the verdict after the jury had rendered its decision in a matter fully tried to the jury.
 {¶ 8} Appellant brings the following five assignments of error from the trial court's decision:
 I. THE TRIAL COURT ERRED IN SWITCHING FROM A MANDATORY JURY DETERMINATION TO AN ADVISORY JURY ON THIS UNJUST ENRICHMENT CLAIM. *Page 4 
 II. RETROACTIVELY EMPANELING AN ADVISORY JURY, WHERE PLAINTIFF HAS A RIGHT TO A JURY TRIAL ON HIS UNJUST ENRICHMENT CLAIM WAS ERROR.
 III. GRANTING A JUDGMENT NOTWITHSTANDING THE VERDICT ON PLAINTIFF'S UNJUST ENRICHMENT CLAIM WAS ERROR.
 IV. THE TRIAL COURT ERRED IN FINDING AS A MATTER OF LAW THAT IT WAS NOT UNJUST TO NOT PAY PLAINTIFF HIS EARNED BONUS.
 V. FAILING TO CHARGE THE JURY ON PLAINTIFF'S QUANTUM MERUIT CLAIM WAS ERROR.
 {¶ 9} AEPES has filed a conditional cross-appeal and brings the following four assignments of error:
 Assignment of Error No. 1
 THE TRIAL COURT ERRED BY ALLOWING THE JURY TO CONSIDER SIMULTANEOUSLY PLAINTIFF'S CONTRACT AND QUASI-CONTRACT CLAIMS.
 Assignment of Error No. 2
 THE TRIAL COURT ERRED BY REJECTING DEFENDANT'S PROPOSED JURY INSTRUCTIONS CONCERNING PLAINTIFF'S UNJUST ENRICHMENT CLAIM.
 Assignment of Error No. 3
 THE TRIAL COURT ERRED BY EXCLUDING AS HEARSAY INVESTIGATION NOTES PREPARED BY DEFENDANT'S VICE PRESIDENT FOR HUMAN RESOURCES.
 Assignment of Error No. 4
 THE TRIAL COURT ERRED BY ALLOWING INTO EVIDENCE A PREJUDICIAL HEARSAY PROFFER LETTER FROM PLAINTIFF'S CRIMINAL ATTORNEY TO THE COMMODITIES FUTURES TRADING COMMISSION. *Page 5 
 {¶ 10} The threshold question in this case, and one that cuts across most assignments of error presented by both parties, concerns the capacity in which the jury was impaneled by the trial court. Civ.R. 39 governs trial by jury, including the use of advisory juries on non-jury issues, providing as follows:
 (A) By jury
 When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. The trial of all issues so demanded shall be by jury, unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist. * * *
 (B) By the court
 Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues.
 (C) Advisory jury and trial by consent
 In all actions not triable of right by a jury (1) the court upon motion or on its own initiative may try any issue with an advisory jury or (2) the court, with the consent of both parties, may order a trial of any issue with a jury, whose verdict has the same effect as if trial by jury had been a matter of right.
 {¶ 11} Because it appears that some parts of the trial court's discussion of which issues would be tried to a jury, and whether that jury would be an advisory jury or one making a binding determination, are not preserved in the record, we must glean the trial court's rulings from rather tangential references arising later in the proceedings. AEPES *Page 6 
asserts in its brief on appeal that, in response to pre-trial briefing of the issue by the parties, the court expressly ruled that appellant's contractual claims would be tried to the jury, and that appellant's equitable claims for recovery in quantum meruit or unjust enrichment would be tried to the court with the jury serving an advisory function pursuant to Civ.R. 39(C). Unfortunately, the court does not appear to have issued a written ruling on this aspect of the matter, nor does the transcript contain any verbal disposition of the parties' arguments.
 {¶ 12} The court would subsequently at three points in the transcript verbally address the question of (1) which of appellant's claims would be allowed to go to the jury; (2) what the jury's function would be with respect to those claims, i.e., whether the jury would render a binding verdict or an advisory one; and (3) what effect the jury's determination with respect to some aspects of the legal claims would have in precluding or mandating certain determinations in those equitable aspects of the matter tried to the bench.
 {¶ 13} With respect to this last issue, the trial court engaged, on the morning before charging the jury, in a lengthy discussion ofTull v. United States. (1987), 481 U.S. 412, 107 S.Ct. 1831, in which the United States Supreme Court discussed the impact of ancillary equitable claims upon a right to jury trial on legal ones: "If a legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. The right cannot be abridged by characterizing the legal claim as `incidental' to the equitable relief sought." Id. at 425,107 S.Ct. at 1839. The trial court then went on to discuss in detail certain aspects of this matter, namely the *Page 7 
faithless servant doctrine, in which the jury's determination with respect to the contract claim would affect the court's disposition of the equitable ones.
 {¶ 14} While appellant on appeal attempts to characterize this discussion by the trial court as a declaration that all matters in the case would be tried to the jury and that no aspect of the jury's verdict would be merely advisory on those issues reserved for trial to the bench, we must disagree. Although admittedly some ambivalence remained which would not be clarified until the trial court's post-verdict statements, it is clear that the court did not intend to place the equitable claims before the jury as of right.
 {¶ 15} Subsequently, counsel for AEPES attempted to further clarify the matter while the jury was deliberating:
 MR. SIEGEL: Secondly, if just to note for the record, it's our understanding that the Court has impaneled the jury as an advisory jury with respect to the quasi contract claim, and therefore, anything that the jury returns with regard to that claim in their advisory capacity, your Honor, I don't believe would be within the scope of the case you cited earlier before we came in. That was that would not be a determination by the jury of those facts; it would be, at best, advisory.
 THE COURT: Well, we'll sort that out after we see what they decide.
(Tr. at 115.)
 {¶ 16} Again, while the court's response to defense counsel's attempt to clarify the jury's status was less than unequivocal, the court on this occasion did not clearly declare that the jury would hear and conclusively decide the equitable claims.
 {¶ 17} Finally, after the jury had returned a verdict in favor of AEPES on appellant's contract claims and in favor of appellant on his unjust enrichment claim, the *Page 8 
court rendered a lengthy and detailed oral decision reflected in pages 186 through 206 of the transcript. In its decision, the court clarified that the jury had only rendered a binding verdict as to the legal claim for recovery under a contract, and that the jury's determination on the equitable claim was merely advisory and the court would decline to follow it for a number of stated reasons.
 {¶ 18} We therefore find, on the question of what role the jury served in this case, that the trial court in response to the plaintiff's jury demand impaneled a jury to hear and decide appellant's contract claim, which arises at law. We further find that the trial court properly decided that appellant's equitable claims in quantum meruit and unjust enrichment would be heard and decided by the court, and the jury would serve in an advisory capacity only on these claims. We further find that there is no indication in the record that AEPES consented pursuant to Civ.R. 39(C)(2) to have these equitable claims tried by the jury with a binding verdict. We will further discuss the various arguments of the parties on appeal on this basis.
 {¶ 19} Appellant's first assignment of error asserts that the trial court erred in impaneling a jury to render a mandatory jury determination and then taking some aspects of the matter away from the jury. Because we find that the trial court never, in fact, impaneled a jury to render a binding verdict on the equitable claims, appellant's first assignment of error is overruled.
 {¶ 20} Appellant's second assignment of error asserts that appellant had the right to a jury trial on his unjust enrichment claim. Appellant does not on appeal present any authority for the proposition that these equitable claims invoke a right to a jury trial. In *Page 9 
arguments before the trial court on this issue, however, appellant did provide two unreported Ohio cases for this proposition: Novomont Corp.v. The Lincoln Electric Co. (Nov. 1, 2001), 8th Dist. No. 78389, andBush v. The Estate of Carl A. O'Dell (Feb. 26, 1992), 5th Dist. No. CA-3705. While neither decision explains why equitable claims indeed were referred to the jury in each case, it remains the clear consensus of law in Ohio that equitable claims are not triable as of right to a jury. See, e.g., Ashmore v. Eversole (Nov. 29, 1996), 2nd Dist. No. 15672; Natl. City Bank v. Abdalla (1999), 131 Ohio App.3d 3204;Cross v. Ledford (1954), 161 Ohio St. 469. Appellant's second assignment of error is accordingly overruled.
 {¶ 21} Appellant's third assignment of error asserts that the trial court erred in granting judgment notwithstanding the verdict on appellant's claim for unjust enrichment. Appellant's fourth assignment of error asserts that the trial court erred in determining that appellant was not entitled to a judgment on his equitable claim for past bonuses. We will address these two assignments of error together.
 {¶ 22} We first note that the trial court clearly stated that it was not granting judgment notwithstanding the verdict under Civ.R. 50 because the jury was serving merely in an advisory function. We have held as much in our discussion above. The standard, therefore, for the trial court in disregarding the trial court's jury was not the stringent one for granting judgment notwithstanding the verdict, but whether the trial court, in its independent assessment of the facts heard and tried to the court, chose to give weight to the jury's resolution of evidentiary issues before ruling on these equitable matters that ultimately were triable only to the court. In its oral decision, the trial court *Page 10 
noted that although it approved of some aspects of the jury's verdict on the equitable claims, particularly the amount awarded if any amount were to be awarded at all, the court ultimately was compelled to differ from the jury on whether the weight of the evidence supported any judgment in favor of appellant on his equitable claims. Because the trial court's judgment on these claims is not, strictly speaking, in derogation of a jury verdict, it does not represent judgment notwithstanding the verdict and our only standard on appeal is whether the trial court's judgment on these issues tried to the court is supported by the manifest weight of the evidence.
 {¶ 23} When reviewing a trial court's decision on a manifest weight of the evidence basis, we are guided by the presumption that the factual findings of the trial court were correct. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212, paragraph one of the syllabus. The rationale for this presumption is that the trial court is in the best position to evaluate the evidence by viewing witnesses and observing their demeanor, voice inflections, and gestures. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,461 N.E.2d 1273. Likewise, documentary evidence is best viewed in the context of the entire scope of evidence heard at trial, and the trier of fact is in the best position to assess the global weight of all evidence heard. Thus, judgments supported by some competent, credible evidence going to all the essential elements will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. *Page 11 
 {¶ 24} We will begin by defining the elements needed to establish appellant's equitable claim. The parties agree that, at a minimum, in order to prevail upon a theory of unjust enrichment appellant needed to establish the following three elements: (1) a benefit conferred by him upon AEPES; (2) knowledge by AEPES of the benefit conferred; and (3) retention of the benefit by AEPES under circumstances where it would be unjust to do so without payment. Hummel v. Hummel (1938),133 Ohio St. 520, 527. In addition, AEPES argues that a more stringent standard must be applied in this case before appellant can recover on an unjust enrichment claim, and that beyond the above elements appellant must show fraud, illegality, or bad faith on the part of AEPES. This is based on cases holding if an express contract exists concerning the services for which compensation is sought, the doctrine of unjust enrichment does not apply in the absence of fraud, bad faith, or illegality because where the relationship between parties is governed by an express contract, unjust enrichment is unavailable absent these additional factors.Weiper v. W.A. Hill Assoc. (1995), 104 Ohio App.3d 250, 262,Rumpke v. Acme Sheet Roofing, Inc. (Nov. 12, 1999), 1st Dist. No. 17654. This restriction on equitable recovery has been extended to employment cases: "A party seeking a remedy under a contract cannot also seek equitable relief for unjust enrichment since, absent evidence of fraud, illegality, or bad faith, compensation is governed by the parties' contract." Howland v. Lyons (Mar. 7, 2002), 8th Dist. No. 77870.
 {¶ 25} AEPES asserts that the term "express contract" has been held by some courts to include employment-at-will situations, such as appellant's, in which employment was not governed by a defined contract. AEPES asserts that this is a logical extension of *Page 12 
the Supreme Court of Ohio's decision in Lake Land Emp. Group of AkronLLC v. Columber (2004), 101 Ohio St.3d 242, 247, in which the court stated that "at-will employment is contractual in nature. In such a relationship, the employee agrees to perform work under the direction and control of the employer, and the employer agrees to pay the employee at an agreed rate." AEPES postulates that because at-will employment is "contractual in nature," it is governed by an "express contract" regulating all aspects of the employment relationship and warrants application of Weiper and Howland to require the stricter standard for recovery in equity.
 {¶ 26} AEPES argues that this court has accepted this rationale on at least one occasion. In an employment case, Kucan v. Gen. Am. Life Ins.Co., 10th Dist. App. 01AP-1099, 2002-Ohio-4290, this court practically in the same legal breath found "no evidence of an express or implied contract," id. at ¶ 31, precluding recovery by the plaintiff-employee under contract theories, and then found that the matters in dispute were governed by the terms of an express contract, and the plaintiff was accordingly barred from recovery on his unjust enrichment claim in the absence of fraud, bad faith, or illegality, id. at ¶ 35.
 {¶ 27} Despite the language employed in the above-outlined sections ofKucan, that case in fact did involve extensive discussion of the express contractual terms governing the plaintiff's employment, as did Metz v.Am. Elec. Power Co., Inc., 172 Ohio App.3d 800, 2007-Ohio-3520, a companion case to the present one that cites Kucan. We therefore do not believe that Kucan stands for the proposition that an at-will employment relationship necessarily constitutes the form of express contract contemplated under *Page 13 Weiper, and if that were the holding in Kucan, we would overrule it. There is no reason to find that an at-will employee who has failed on an employment claim precisely because of the absence of an express contract should then see that contract miraculously revived as a bar to recovery in equity. In the present case, AEPES strove throughout to establish that appellant's terms of at-will employment did not contractually entitle him to a bonus because the bonus plans in place were entirely discretionary with the employer. It is undisputed that AEPES regularly paid its energy traders bonuses under a discretionary plan, and (more pertinently to the time period involved in appellant's claim) after the expiration of that plan continued to pay bonuses in the absence of any explicit plan at all. It follows that whatever at-will employment agreement — "contractual in nature" under Lake Land — governed appellant's employment, it neither mandated nor precluded bonuses. If appellant's rights to such a bonus are not contractual, then they are not governed by an express contract. Lacking an express contract controlling this aspect of appellant's employment, Weiper andHowland do not apply, and appellant needed only show the basic elements of unjust enrichment in Hummel before the trial court. As it happens, the trial court displayed remarkable prescience in rejecting the proposed Kucan standard and properly considered the matter solely under the elements set forth in Hummel. We will therefore review the trial court's decision under the same basic unjust enrichment standard employed by the trial court.
 {¶ 28} The trial court emphasized the following evidence in its decision. The trial court noted that appellant was initially hired based on his accounting skills to help check on the accounting practices of the trading division. Appellant then of his own volition *Page 14 
sought transfer to become a trader himself. During the course of his employment, he was repeatedly educated on the ethical expectations of AEP and its subsidiary AEPES, including training films and a video sent to his home about corporate honesty and corporate compliance. AEP maintained an anonymous reporting number for whistle blowers. Despite this, appellant joined in a pre-existing practice by other traders of misreporting prices and other information about energy trades to entities reporting and compiling a public index of such trades. While the trial court was skeptical about the extent and impact of appellant's personal activities on the rapid demise of the energy trading activities of AEP and it subsidiaries, the trial court did note that AEP eventually paid an $81,000,000 fine for irregular activities by its traders, and the bulk of AEP's energy trading activities were shut down shortly after appellant's termination, including the layoffs of most other traders, even those not directly implicated in irregular activities.
 {¶ 29} Even accepting, as the trial court seems to have accepted, that appellant generated a profit of $16,500,000 on his trading book in 2002 before being terminated, and that AEPES and its parent company retained this benefit, the balance of the evidence does not support reversal of the trial court's judgment. Specifically, in light of appellant's personal knowledge over a substantial period of time of the illegal activities in the trading desk where he worked, his failure to report these illegal activities, and the subsequent heavy fine imposed upon AEP for its trading activities, it is difficult to find error in the trial court's conclusion that it was not unjust or improper to allow AEPES to retain the benefit conferred by appellant's activity while employed. We accordingly find that there is competent, credible evidence going to the essential elements upon which the trial court *Page 15 
found in favor of AEPES, and we will not reverse the judgment of the trial court. Appellant's third and fourth assignments of error are accordingly overruled.
 {¶ 30} Appellant's fifth assignment of error asserts that the trial court erred in failing to instruct the jury separately on his quantum meruit claim in addition to his claim for unjust enrichment. Appellant asserts that the two causes of action are distinguishable, and the jury should have been instructed separately on both.
 {¶ 31} In the posture in which we now place this appeal with respect to the jury verdicts, we first note that any failure to instruct an advisory jury amounted to harmless error and the actual question is whether the trial court, in trying these matters itself, should have separately considered and ruled upon appellant's quantum meruit claim. Quantum meruit has been defined as an equitable doctrine based on the principle that one should not be unjustly enriched at the expense of another, to be awarded when one party confers a benefit on another without receiving just compensation for the reasonable value of services rendered. Metz v. AEP, 10th Dist. No. 06AP-1161, 2007-Ohio-3520, citingBeckler v. Bacon, 170 Ohio App.3d 612, 2007-Ohio-1319, ¶ 13.
 {¶ 32} Although we do not need to broadly hold that the two forms of equitable relief are in fact indistinguishable, we find in the present case that the trial court did not err in failing to analyze and separately rule upon appellant's quantum meruit claim because the two claims are so materially interrelated on the facts that denial of one mandated denial of the other. See, e.g., Caras v. Green Green (June 28, 2006), 2nd Dist. No. 14943, holding that the two forms of equitable relief are closely related, and U.S. Health Practices, Inc. v.Blake (Mar. 22, 2002) 10th Dist. No. 00AP-1002 ("quantum meruit and *Page 16 
unjust enrichment are doctrines derived from the natural law of equity, and the essential elements of recovery under both are the same").
 {¶ 33} We accordingly find that the trial court did not commit prejudicial error when it did not expressly analyze and pass upon appellant's claim for quantum meruit in the process of rendering judgment for AEPES on appellant's equitable claims generally, and appellant's fifth assignment of error is overruled.
 {¶ 34} In accordance with the foregoing, appellant's first, second, third, fourth and fifth assignments of error are overruled. The conditional cross-appeal of appellee AEPES need not be considered, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
SADLER, J., concurs separately.
TYACK, J., dissents.